JOHN HUTCHISON v. JOHN M. CANON.

(Filed February 18, 1898.)

CONTEMPT—*Punishment for—Limitation on.* The provisions of ch. 13, Session Laws, 1895, do not limit the power of a district court, or judge thereof, to enforce a legal and proper order for the payment of alimony to a punishment of the party guilty of a wilful violation of said order by imprisonment not exceeding ten days and a fine not exceeding fifty dollars; but said court or judge has the power to imprison such party until he complies with the order so made.

(Syllabus by the Court.)

*Original Proceeding in Habeas Corpus.*

*R. B. Forrest,* for the petitioner.

*C. H. Carswell* and *Blake & Blake,* per contra.

Original application for writ of *habeas corpus,* by John Hutchison, alleging that he is illegally restrained of his liberty and confined in the county jail of Canadian county by John M. Canon, sheriff of said county, acting under and by virtue of an order of Justice John C. Tarsney. Application denied.

Opinion of the court by

KEATON, J.: The sole question presented for determination in this case is whether or not the husband, being a party to an action for divorce and alimony, can be imprisoned for a greater period than ten days for the purpose of enforcing a compliance with an order of the trial court or judge requiring him to pay a certain specified sum monthly as temporary alimony after said party, upon a proper hearing, has been adjudged in contempt for a refusal to obey such order.

The order complained of, omitting the formal parts, reads as follows:

· "On this December 23, 1897, this cause came on for hearing upon the matter of contempt, and the court being fully advised in the premises, finds that the defendant, John Hutchison, disobeyed the order of this court, to pay the sum of $30 on the first days of May, ·June, July, August, September, October, November and December, 1897, and finds that the defendant refusing to comply with the order of this court, to make said payment in the case of *Hutchison v. Hutchison*, and that the defendant was able to make such payments, and the defendant is in contempt of this court in refusing to comply with said order.

"It is, by the court, ordered that the defendant be committed to the county jail of said Canadian county until the said order of this court is complied with, and the payment of thirty dollars each for the months above mentioned be paid in the case of *Hutchison v. Hutchison*."

The portion of the petition relied on for discharge by writ of *habeas corpus* is based entirely upon ch. 13, Session Laws, 1895, and so much of said act as is necessary to be construed in determining the question in controversy is as follows:

"Section 1. Contempts of court shall be divided into direct and indirect contempts. * * Indirect contempts of court shall consist of wilful disobedience of any process or order lawfully issued or made by the court; resistance wilfully offered by any person to the execution of a lawful order or process of the court.

"Sec. 2. Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court; but the fine in no case shall exceed fifty dollars or the imprisonment a longer term than ten days in the county jail: *Provided*, That when any person shall be imprisoned for the non-payment of a fine he shall be discharged at the expiration of thirty days. Indirect contempt shall be shown to the court by an information stating the acts constituting the contempt, and the facts may be shown either by affidavit or testimony of witnesses, as the court may direct.

"Sec. 5. That section 2039, of the Statutes of Oklahoma, of date of 1893, and all acts and parts of acts inconsistent with this act be, and the same are, hereby repealed."

It is shown by the applicant, and not denied by respondent, that the former had been imprisoned in the county jail of Canadian county for a period of eleven full days before filing his petition herein. General sec. 4548, Statutes 1893, provides that:

"After petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may make and enforce by attachment such order to restrain the disposition of the property of the parties or of either of them, and for the use, management and control thereof, or for the control of the children and support of the wife during the pendency of the action, as may be right and proper; and may also make such order relative to the expenses of the suit as will insure to the wife an efficient preparation of her case; and on granting a divorce in favor of the wife or refusing one on the application of the husband, the court

may require the husband to pay such reasonable expenses of the wife in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

The question thus presented is whether or not the district courts of this Territory have the power to enforce their orders for the payment of temporary alimony and suit money in the clases of cases designated in said sec. 4548, for a fine of $50, and an imprisonment for ten days will, in many cases, be ineffective to compel a compliance with such orders; and, if these orders cannot be enforced by attachment and imprisonment as for contempt of court, they cannot be enforced at all, for the reason that no other means of enforcement is provided. (*Staples v. Staples*, [Wis.] 58 N. W. 1036.) That such power has almost (if not quite) universally been conceded to the courts having original jurisdiction of such causes, both in England and America, will, I apprehend, be admitted. If Oklahoma is to be made an exception, in this regard, to the general rule, it should be done only upon the most explicit expression of legislative will to that effect, for it is evident that the consequences which must necessarily follow such a holding will, in many cases, be most disastrous; not so much because of the offense committed against the authority and dignity of the court as because of said court's inability to compel a compliance with its order providing for the support and maintenance of the wife and mother, and (in frequent cases) her infant children, during the pendency of the litigation. I think the rule, supported by the weight of authority, is that the power inheres in every court having jurisdiction of the subject matter to enforce an order, either for temporary or permanent alimony, by attach-

ment and imprisonment, even though such power is not conferred by express statutory enactment. See *Andrew v. Andrew*, 62 Vt. 495; 20 At. 817, wherein it is held that:

"The position of the petitioner is that there is no provision in the statute which authorizes the enforcement of a decree for the payment of permanent alimony by means of this process, and that the court has no power beyond that expressly conferred by the statute. It is true that the jurisdiction of the county court in 'divorce proceedings is statutory; but this does not justify the conclusion that its power is limited by the letter of the statute. That the jurisdiction is not statutory in the strict sense contended for is apparent from the case of *LeBarron v. LeBarron*, 35 Vt. 364. We learn from the opinion in that case that before the passage of any statute authorizing the granting of temporary alimony, the supreme court, in which the divorce jurisdiction was then lodged, granted such alimony, on the ground that the power to do so grew out of the nature of the proceeding, and was necessary to prevent a failure of justice. * * * This method of enforcement is spoken of by counsel as unusual and extraordinary. There is, however, nothing unusual in the use of process of commitment for this purpose. In some states it is directly authorized by statute. In others it is held to be proper without statutory authorization. It is among the remedies available under the present English divorce act. And, if we look beyond the proceedings of the ecclesiastical court, we find it was the ultimate means of enforcement under the common law practice. The ecclesiastical court pronounced its sentence of excommunication against the disobedient party. The common law added to his spiritual disabilities an incapacity to be a witness or to bring a suit. But the matter did not necessarily rest upon this deprivation of his privileges as a Christian and a citizen. If he did not submit within a certain time, upon proper application a writ issued out of chancery, upon which he was com-

mitted to jail, and there detained until he complied with the requirements of the ecclesiastical court. The process was different, but the results to the contumacious party were the same. (3 Bl. Comm. 101.) The purposes of the statute and the interests depending upon it, are such that we have no hesitation in sanctioning a resort to this means of coercion. A prompt compliance with the decree of the court is of the utmost importance, both to the individuals for whose benefit the decree is made, and to the public at large. The law, for a sufficient reason, divides the family. The children of tender age are ordinarily placed in the care of the mother. The property is usually in the hands of the husband. The support of the wife and children may depend entirely upon the allowance made by the court. It was unquestionably the intention of the legislature to invest the court with such power as would enable it to make this provision certain, and easily and readily available. This is the first time that the matter of enforcing the payment of permanent alimony has been before this court. We think compulsory process has seldom been found necessary. County courts have some times enforced these decrees by attachment for contempt, and have some times ordered that executions issue for their collection. In many cases the latter process may be adequate. But we are clearly of the opinion that the power of the court extends to the use of the process which is likely to be effectual in all cases, and that it is not necessary to exhaust other possible remedies in order to become entitled to this."

So much for the importance and necessity of the existence of such power; but has it been taken away from the courts of this Territory, or so limited as to become ineffectual, by said sec. 2, ch. 13, Session Laws, 1895? We think not; but, on the contrary, believe that there is a clear distinction to be drawn between what is therein intended as a "punishment for contempt" and the power of the court, expressly conferred by statute, to enforce a

lawful order by attachment and imprisonment. For a contempt in disobeying such an order the punishment is of two separate and distinct kinds; one to enforce obedience to the order; the other, to vindicate the honor and dignity of the court and to compel respect for its authority. For instance, in the case at bar, the trial court, upon ascertaining, in a proper manner, that its former order had been wilfully violated, could have fined the offender in the sum of $50, and have sentenced him to imprisonment for a term of ten days as a punishment of the latter kind, and regardless of any punishment which might become necessary for the purpose of enforcing a future compliance with the requirements of said order. The distinctions thus drawn are not novel but are well founded in authority as well as reason. The supreme court of California, *In re Wilson*, 75 Cal. 580, 17 Pac. 698, says, among other things, that:

"There is a well settled distinction between a civil and a criminal contempt. The former consists generally, in failing to do something ordered to be done by a court in a civil action, for the benefit of the opposing party therein; the latter consists in acts of disrespect of the court, such as disorderly or violent conduct in its presence or immediate vicinity, or in the doing of a forbidden act, resistance to process, etc."

In *Park v. Park*, it is held that:

"Upon the return of an attachment against defendant for contempt in refusing to pay and give security for the payment of alimony adjudged against him in divorce proceedings, and upon motion to vacate the attachment the court adjudged him to be in contempt, ordered him to pay a fine, to give security in a specified amount for future alimony, and to stand committed until compliance. *Held*, no error." (80 N. Y. 156.)

The foregoing distinctions are clearly and concisely stated in the case of *In re Fanning*, 40 Minn. 4; 41 N. W. 1076, wherein it is held:

"In this case the order committing for contempt had a double aspect: First, it was in the nature of a remedy to the party to enforce payment of the alimony; second, it was also punitive, or merely in punishment of the offense of contempt. In the first aspect it was only for the private benefit of the party; in the second, only to assert and vindicate the authority of the court, and so far its purpose was public. So far as it was private or remedial —that is, so far as it required payment of money to the other party, its force and life fell with the entry of judgment of dismissal, but so far as it imposed a fine the entry of judgment did not affect it. It follows that the petitioner is not entitled to a discharge until he has paid the fine. On payment of that, the remainder of the order being no longer in force, of course he will be entitled to a discharge."

To same effect is *Ballard v. Caperton*, 2 Met. (Ky.) 412.

I am clear that it was this kind of punishment, that is, punishment strictly and only for the contumacious conduct of a party, that the legislature, by the enactment hereinbefore set out, has sought to limit to a fine of $50 and imprisonment not exceeding ten days. This view is made more apparent by sec. 3 of said act, which reads as follows:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a change of judge or venue, and a trial by jury."

Can it be said that the legislature ever intended that, in a chancery case, such as injunction, the court would be compelled, upon demand of a party charged with having

violated its order, to grant him a trial by jury or a change of judge or venue, and then, perhaps, a trial by jury, before any further steps could be taken to enforce such order? If such a meaning were intended, I very much doubt the constitutionality of this enactment; and if a statute can be given any reasonable interpretation which will render it constitutional and valid, such construction will always be adopted in preference to one that would be in conflict with organic law.

Another rule of construction which I think applicable here is well stated by an eminent text writer, as follows:

"In the consideration of the provisions of any statute, they ought to receive such a reasonable construction, if the words and subject matter will admit of it, as that the existing rights of the public, or of individuals, be not infringed. Considerations of what is reasonable, convenient, or causes hardship and injustice, have a potent influence in many cases. It is always assumed that the legislature aims to promote convenience, to enact only what is reasonable and just. Therefore, when any suggested construction necessarily involves a flagrant departure from this aim, it will not be adopted if any other is possible by which such pernicious consequences can be avoided." (Sutherland on Statutory Construction, sec. 322.)

It will be observed that it is the punishment for the contempt proper that is limited by the provisions of the statute under consideration and not the power of the court to enforce any legal and proper order.

In many states inferior courts, such as justices of the peace, have the power to assess fines in a certain limited amount as punishment for contempt, but no power to imprison therefor yet, under the penal statutes of said states, such inferior courts have the power to imprison

persons upon their failure to pay legally imposed fines. Under such ciccumstances the appellate courts have, so far as I have been able to ascertain, invariably held that a justice of the peace, after having imposed a fine upon a party for contempt of his court, has the power to commit such party to jail in default of payment of the fine. While the proposition discussed in these cases is not precisely the same as the one presented in the case at bar, I think a large portion of the reasoning therein contained strictly applicable to the question under consideration. In *Brown v. People,* 19 Ill. 614, the court said:

"The only question in the case is, whether a justice of the peace who has imposed a fine for a contempt of his court, can imprison the party until the fine and costs are paid. Of this power we have no doubt. Such a power is indispensible to the proper administration of justice in these as well as all other courts. The statute has authorized justices' courts to impose a fine of five dollars for contempts, and to this extent it may be considered a limitation upon their power to fine for contempts, and it may be held to take away the right to imprison directly for contempts; but surely it could never have been the intention of the legislature to limit the power of these courts to enforce the collection of such fines by the well known modes previously practiced for the collection of such fines, and which are allowed for the collection of all other fines. * * Should we hold that the only means these courts have of protecting themselves is by imposing fines and issuing ordinary executions to collect them, we might as well at once close the doors of these courts altogether. * * It was within the power of the justice, and it was his duty, to imprison the party guilty of the contempt, till the fine and costs were paid."

In *ex parte Sweeney,* it is held by the supreme court of Nevada that:

"Under the statutes of this state no court or judge can impose a greater fine than $500, or imprison for more than five days (or both such fine and imprisonment,) as a punishment, upon any person guilty of contempt. But a party may be committed to jail until the fine imposed is paid, as a means of enforcing its payment, as provided in the criminal practice act in relation to the method of enforcing fines."

In discussing the question thus presented, said court, per Hawley, C. J., in the opinion, uses the following language:

"If the courts have not the power to enforce a fine for contempt in a case like this, they would be powerless to compel obedience to their lawful decrees and judgments —a power which is inherent in all courts. The judiciary would, indeed, hold but a barren scepter if their power ceased with declaring the law. The mere imposition of a fine amounts to nothing unless it can be enforced. If the argument of petitioner's counsel, to the effect that the statute relating to contempts must govern this case as to the enforcement of the fine, as well as its imposition, should be sustained, then it would necessarily follow that there could be no enforcement of the judgment, for the statute does not provide any mode for its enforcement, either by the issuance of an execution or by imprisonment. The imposition of a fine under such a construction of the statute would be a mere farce. But the statute cannot, within its obvious meaning, be so construed. The courts are invested with the power to enforce as well as pronounce their judgments. The language in the statute relating to contempts, that 'no imprisonment shall exceed the period of five days,' refers to the punishment. No imprisonment, as punishment, for contempt, shall exceed five days. The entire section relates to punishment only, and was evidently not intended by the legislature as a prohibition of the power of courts to enforce their judgments imposing fines. It

was intended as a limitation of the power of courts to inflict the punishment to the extent allowed by the common law, and it cannot, it seems to me, be construed as a prohibition against the enforcement of any fine in the usual and ordinary methods, provided by the statute for the enforcement of judgments in criminal cases." (15 Nev. 74; 1 Pac. 379.)

Counsel for petitioner claims some support for his poition from the case of *Taylor v. Newblock*, 5 Okl. 647. In that case no opinion whatever was expressed upon the question here in controversy, and the only proposition decided therein is that "a judgment or order of court that a defendant stand committed to the county jail until the further order of the court for a contempt in refusing to obey a previous order requiring him to surrender certain promissory notes, adjudged to be the property of another, is illegal and void for uncertainty as to the duration of the punishment, and will not justify the imprisonment."

For the reasons stated, I think that the petition and application for writ of *habeas corpus* in this case should be denied, and that petitioner be remanded. It is so ordered.

Tarsney, J., not sitting; all the other Justices concurring.