## Ex parte BUD BALLEW.

No. A-2767.   Opinion Filed Nov. 7, 1921.
(201 Pac. 525.)

(Syllabus.)

1.   **Contempt—Power of Judge of Court of Inquiry to Punish for Contempt.** A judge of a so-called court of inquiry to investigate violations of the prohibitory law, under the provisions of Session Laws of 1911, p. 159, has only such powers to punish for contempt as are specifically named in the act.

2.   **Contempt—Assault on Judge on Street not Contempt.** Section 25 of the Bill of Rights directs the Legislature to pass laws defining contempts. Sections 2277 and 2279, Rev. Laws 1910, define both direct and indirect contempts. The act complained of here does not come within either definition. The affirmative statutory definition of the several acts constituting contempt, made pursuant to the terms of the Constitution, implies a negative as to all other acts (of a contemptuous nature not mentioned in the statute.

Bud Ballew was imprisoned for an alleged direct criminal contempt of court by assaulting the person of the district judge, and he makes an original application for habeas corpus. Writ allowed, and petitioner ordered discharged.

Sigler & Howard, Pruiett and Sniggs and R. F. Turner, for petitioner.

S. P. Freeling, Atty. Gen., and Smith C. Matson and R. McMillan, Asst. Atty. Gen., for respondent.

Clinton O. Bunn and Thomas Norman, amici curiae.

BESSEY, J.   The petitioner, Bud Ballew, says he is illegally restrained of his liberty by the sheriff of Carter county, Okla., pursuant to an order or judgment of the district judge of said county, for an alleged direct criminal contempt of court, by assaulting the person of W. F. Freeman, district judge, on May 20, 1916, on a public street in the city of Ardmore. Portions of the record tend to show that this assault was provoked by and grew out of certain remarks made by the district judge in the course of a proceeding to inquire into any violations of the prohibitory laws, under section 3611, R. L. 1910, as

amended by Session Laws of 1911, p. 159, indicating that the petitioner was in collusion with known violators of the prohibitory law.  Other portions of the record seem to indicate that the petitioner took offense at remarks made some time previous by the judge, in conference with the county judge, county attorney, sheriff, and county commissioners, concerning violations of the prohibitory law, in which the judge stated that the petitioner seemed to be in collusion with violators of the prohibitory law.   The record also discloses that the assault may have been brought about in whole or in part by the issuance and service of a temporary injunction abating a nuisance on premises in which the petitioner may have had an interest.

It is conceded that the petitioner at this time was a deputy sheriff of Carter county.   Portions of the testimony taken at the several inquisition hearings disclosed that a number of witnesses, upon information received from others, had obtained quantities of whisky, taken from and purchased in petitioner's barn in Ardmore in the nighttime.   Other testimony tended to show that the petitioner had, or might have had, an interest in a certain roadhouse  some distance from Ardmore where intoxicating liquor was being sold.   On May 19, 1916, upon the information obtained from witnesses at these inquiry proceedings, the county attorney instituted injunction proceedings against Cyrus Pyatt for operating a roadhouse near Ardmore where intoxicating liquors were sold and in which the petitioner was said to have an interest, and the court on that day granted the injunction.   Late in the evening of May 20th. the petitioner, in company with Cyrus Pyatt, insultingly accosted the judge on the streets of Ardmore, and, calling the latter's attention to the objectionable remarks made at the hearing, proceeded to administer a physical assault upon the person of the judge.

One month later the judge, assuming to act as the district court, made the following order:

"Attachment for Contempt.

"In the District Court of Carter County, Oklahoma.

"State of Oklahoma, Carter County—ss.:

"To the Sheriff of Carter County—Greeting:

"You are hereby commanded to attach the body of D. M. (Bud) Ballew so that you may have him, the said D. M. Ballew, instanter before the judge of the district court of Carter county, Okla., now in session, to answer for a contempt of said court, said contempt being an assault made by the said D. M. Ballew upon the person of the judge of this court, upon Main street in the city of Ardmore, Okla., on the 20th day of May, 1916, and have you then and there this writ.

"Witness my hand this 20th day of June, 1916.

"W. F. Freeman, Judge."

The sheriff executed this order the same day and brought the petitioner before the district judge, where the following proceedings were had:

"The Court: This, Mr. Ballew, states the proceedings had in the court of inquiry in so far as the same concerns you in any way. The court now informs you of your having made an assault on the district judge of this district on Saturday, the 20th day of May, and now pauses to give you an opportunity to say anything you wish to perjure (purge) yourself of this offense. Have you anything to say?

"The Sheriff: I want to say this. Mr. Ballew was in town this morning, and he had started home. The warrant was only given me a while ago, and I phoned and had him cut off, and he came back, and I brought him up here on this warrant or attachment. He asked me coming up here if there was any bond that could be arranged, if you will set the bond for him; he hasn't had an opportunity to take it up with counsel.

"The Court: This is a direct contempt. In an indirect contempt you are required to issue summons, file an answer, etc. This is what is known as a direct contempt and does not depend upon the testimony of anybody else for its foundation. The law only requires the court to give the defendant an opportunity to be heard why he should not be punished.

"Mr. Ballew: Judge, I haven't had time to make any arrangements to employ counsel. I would like to have time. I would like to be heard, that is all. Of course, I am not prepared to argue it with you myself, I couldn't do that.

"The Court: As I understand this proceeding, this is a direct contempt. It doesn't depend upon proof; it is done in the presence of the court; it would be the statement of the court against the defendant and any witnesses he might have. It is my duty to proceed with the case as it is. I have given you an opportunity to be heard. Have you nothing to say for yourself?

"Mr. Ballew: That is all.

"The Court: The court will then proceed to pronounce its judgment. In doing so the court has the following to say: Your assault upon the district judge of this district was made in the afternoon of the 20th day of May. The court has waited this full month of time in order that the passion of resentment might fully abate, and that this court should reach a time when it could sit free from all passion and prejudice and sit in cool, dispassionate judgment upon this case. The court feels itself to be in that dispassionate frame of mind and has this to say in pronouncing judgment in this case:

"Your provoked assault upon the district judge of this county was a brutal attack upon the dignity of this court, and a bold defiance of the authority of the people, acting through this court. To arrive at a just measure of the punishment which should be inflicted upon you we must take into consideration all those conditions and circumstances which may have moved you to commit this unprovoked assault. You were a deputy sheriff, under oath and bond, and as such it was your imperative duty to lend every assistance to this court in its

effort to abate that spirit of high-handed lawlessness that was rampant among certain elements of the people, which as an officer it was your duty to put down. Instead of this assistance which the court had a right to expect of you for the enforcement of the law of this county, abundant evidence was taken in the court of inquiry which shows that you as an officer at least had a guilty knowledge of these flagrant violations of the law.

"In view of all the circumstances in this case, it is the opinion of the court that you be adjudged guilty of a direct contempt, and that you be punished as for a direct contempt.

"It is therefore ordered, adjudged, and decreed by the court that you, D. M. Ballew, be confined in the county jail for a period of 60 days and that you pay a fine of $200.

"It is further ordered that D. M. Ballew be remanded to the custody of the sheriff of Carter county, Okla., and that the judgment of this court in this behalf be executed by the said sheriff."

It appears from the record that the district judge had previously prepared a judgment record in writing and delivered it to the clerk, with the exception that the period of imprisonment and the amount of the fine were left blank; that after the rendition of the judgment or order the blanks were filled in to conform to the order or judgment pronounced.

The provisions of our statutes relative to inquisitorial proceedings to investigate violations of the prohibitory laws, out of which this controversy arose, appear in Session Laws 1911, p. 159, as follows:

"It shall be the duty of any judge of any court of record, upon the written request of the county attorney, or upon the sworn complaint of any other person, to issue subpoenas for any witness that may have knowledge of the violations of any provision of this act, and such judge shall have the power and it shall be his duty to compel such witness to appear before him and give testimony and produce any books or papers that

will aid or assist in the prosecution of such investigation and inquiry into any violation of the provisions of this act; but no person shall be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he may' so testify or produce evidence. The testimony of each witness shall be reduced to writing by said judge, or by some person designated by him, and the same shall be signed by such witness.    No person shall disclose any evidence so taken, nor disclose the name of any person so subpoenaed and examined, except when lawfully required to testify as a witness in relation thereto; and the unlawful disclosure, by any person, of any such evidence, or of any matter or thing concerning such examination shall be a misdemeanor. Should said judge be unable to hold and conduct such inquiry and investigation for want of time, he may appoint a special judge who shall possess the qualifications and have the power in respect to such matters  as a  judge of the county court. Should any witness refuse to appear before such judge, in obedience to such subpoena, or  refuse to produce any books or papers when lawfully required to do so, or having appeared, shall refuse to answer any proper question, or sign his testi- mony when so required, it shall be the duty of such judge to commit such person to the county jail until he shall consent to obey such order and command of said judge in the premises, and in addition thereto such person may be punished, as for contempt of court, in accordance with the Constitution and laws of this state.  The special judge appointed under the provisions of this section shall take the oath prescribed by the Constitution for state officers, and shall receive the compensation allowed by law for notaries public for taking depositions, and be paid by the county in which such proceeding is had, upon the order of the judge who appointed him.  When it is shown upon the taking of such testimony that there is probable cause to believe that any person has violated any provision of this act, the county attorney shall immediately prepare an information charging such person with such offense and file such information in some court of competent jurisdiction.

Section 25, Bill of Rights, is as follows:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of con-

tempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Section 2277, R. L. 1910, is as follows:

"Contempts of courts shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court."

Section 2279, Id., is as follows:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury."

Ordinarily none but courts of record and of general jurisdiction have the power to punish persons for contempt of court. Where the contempt is direct, this is usually done in a summary manner, without notice or process. In cases of indirect contempt notice and hearing must be had, and in our state one accused of indirect contempt is entitled to a trial by jury.

Now, if the contemptuous assault complained of here grew out of and took place as a consequence of the injunction proceedings, the judge then sitting as a court of record, the assault would be contempt of court, either direct or indirect, provided it comes within the purview of the Constitution and statutes on the subject of contempt. The Constitution, section 25 of the Bill of Rights, quoted above, directs the Legislature to pass laws defining contempt and to regulate the proceedings and punishment in matters of contempt. Our statutes, sections 2277 and 2279, quoted above, have defined both direct and indirect contempt. It will be seen that the charge here of an assault on the judge at the entrance to a barber shop on the street of Ardmore, after court hours, does not come within our statutory definition of direct contempt as being "insolent behavior committed during the session of the court and in its immediate view and presence," nor is it "any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings." Neither was the assault complained of an indirect contempt within the definition of the statute, as being a "willful disobedience of any process or order lawfully issued or made by court," or "resistance willfully offered by any person to the execution of a lawful order or process of court." The assault complained of was none of the things constituting a contempt, as defined by statute. The people of this state, by section 25 of the Bill of Rights, directed the Legislature to define contempts, and a statute defining direct and indirect contempts has since been adopted, specifically enumerating what acts shall constitute contempt. Applying the rule of statutory construction, "Expressio unius est exclusio alterius," the affirmative description and enumeration of the acts constituting contempt implies a negative as to the exercise of such power in other cases not enumerated. 25 R. C. L. 982; 36 Cyc. 1122.

Ordinarily, where the judge, as in this case, is without power to punish for contempt of court, the penalties prescrib-

ed for violation of the Penal Code may be invoked. If the acts and things designated by the statutes as contempt are insufficient to preserve the dignity of the court and properly safeguard its functions, it is for the Legislature to enlarge the scope of the statute. No matter how much the appellate courts may wish to have the statutes changed in this regard, it is for the lawmaking branch of the government to make such change.

If the assault complained of grew out of and took place as a consequence of the remarks of the judge at the informal conference of the county judge, county attorney, and county commissioners, then in any event the offense was nothing more than an assault and battery.

If the contemptuous assault grew out of and took place as a consequence of the remarks made by the judge at one of the sessions of the court of inquiry, which was in no sense a court of record or of general jurisdiction, the judge presiding over such proceeding would have only such right to punish for contempt as is provided in the act authorizing such special proceeding. The conclusion reached that such a proceeding does not constitute a court of record is predicated upon the fact that the act itself nowhere calls it a court, and provides for none of the attributes of a court of record. It does not authorize the judge to render judgment in any matter or to make any order or finding, either of law or of fact, affecting any case; there can be no action pending in such a proceeding; no provision is made for a clerk as is usual in courts of record. The duties devolving upon the judge in these special proceedings are for the most part ministerial, and not judicial. The Legislature might have delegated this power to the mayor of the city, to some notary public, or to some other officer. The fact that this power was delegated to a judge does not necessarily make him a court of record. Burfenning v. R. I. & P. Ry., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; State v. Huser, 76 Okla. 130, 184 Pac. 113.

The power to punish for contempt is predicated upon the fact that the accused has in some manner interfered with judicial functions. The absence of judicial authority to act in the principal action or proceeding makes an order of a judge punishing for contempt in that act a nullity. Ex parte Rowland, 104 U. S. 604, 26 L. Ed. 861; Ex parte Gudenoge, 2 Okla. Cr. 121, 100 Pac. 39.

Having reached the conclusion that, under any theory of this case, the judge under the circumstances was without authority to punish as for contempt, it will be unnecessary to determine whether the accused was deprived of the right of a trial by jury or whether the alleged contempt was waived by a failure to punish the offender at or near the time of the commission of the offense.

For the reasons stated in the opinion, the writ is allowed, and the petitioner ordered discharged.

DOYLE, P. J., concurs.

MATSON, J., disqualified, not participating.