Joseph M. BEST, Petitioner,

v.

Honorable Josh J. EVANS, Judge of the Twelfth Judicial District of the State of Oklahoma, Composed of Rogers, Craig and Mayes Counties, Respondent.

No. 37239.

Supreme Court of Oklahoma.

April 3, 1956.

O. A. Cargill, Luther Bohanon, Oklahoma City, Joe Francis, Truman B. Rucker, Tulsa, for petitioner.

Richard L. Wheatley, Vinita, John E. Luttrell, Norman, for respondent.

JACKSON, Justice.

This is an original proceeding in this court by petitioner, Joseph M. Best, under Art. VII, § 2, Oklahoma Constitution, to prohibit respondent, District Court in Mayes County, Oklahoma, and the Hon. Josh Evans as Judge of said Court, from proceeding in two direct contempt actions against petitioner in said court.

Both contempt actions arose out of alleged improper conduct of petitioner in connection with the trial of a civil action in the respondent court wherein petitioner, as an attorney, represented the defendant.

In case No. 1627 Cr., in said court, it is charged, in substance, that petitioner presented to respondent a journal entry of judgment in the civil action which contained language that was not entered by the court, to-wit: "It is Ordered and Decreed that the defendant have 60 days from November 4, 1955, in which to make and serve a case-made upon the plaintiff; that the plaintiff have 10 days thereafter in which to suggest amendments thereto, and that the same be settled upon 5 days notice, * * *." That said portion as quoted was not entered by the court and that the journal entry of judgment was submitted by petitioner for the purpose, and it was calculated to obstruct the court in the due administration of justice. That such conduct was in bad faith.

In case No. 1628 Cr., petitioner is cited to appear before respondent to answer a direct contempt charge wherein petitioner is charged with knowingly presenting perjured testimony in response to a motion of the plaintiff in the civil action to correct and modify the journal entry. That is, petitioner presented a witness, or witnesses, knowing that said witnesses would testify falsely and commit perjury.

Respondent contends that this court is without jurisdiction to issue a writ of prohibition in this case for the reason that a direct contempt is a crime. It is argued that since this court has no appellate jurisdiction in criminal cases, it has no jurisdiction to issue a writ to prohibit an inferior court from proceeding further in the prosecution of a criminal action such as a contempt action.

■ Under Art. VII, § 2, Oklahoma Constitution, the supreme court has superintending control over all inferior courts. We are of the opinion and hold that this court is empowered, in the exercise of its superintending control, to issue its writ to prohibit the exercise of unauthorized judicial force by a lower court, whether such lower court is acting in its civil or criminal jurisdiction. See Heard v. Sullivan, Okl., 280 P.2d 708.

■ In this case we are called upon to determine whether the courts of this state may apply the broad definition of contempt that existed under the common-law, or whether the common-law definition of contempt has been superseded by statute. There has been much confusion on the subject in the decisions of the appellate courts of this state.

In Ex parte Ballew, 20 Okl.Cr. 105, 201 P. 525, the court held that contempts of court in Oklahoma are governed by constitutional and statutory provisions. In Hosmer v. State, 24 Okl.Cr. 312, 218 P. 164, the court held that common-law contempts had not been superseded by statute, and overruled Ex parte Ballew, supra. The Hosmer case was overruled in Ex parte Owens, 37 Okl.Cr. 118, 258 P. 758, at page 810. Beginning with the case of Emery v. State, 29 Okl.Cr. 29, 232 P. 128, the Criminal Court of Appeals of this state has consistently held that contempts of court in Oklahoma are governed by constitutional and statutory provisions, and not by common-law rules. See Ex parte Dawes, 31 Okl.Cr.

397, 239 P. 689; Moore v. State, 41 Okl.Cr. 310, 272 P. 1032; and Cannon v. State, 58 Okl.Cr. 451, 55 P.2d 135. See also Brown v. State, 89 Okl.Cr. 443, 209 P.2d 715.

Our present statute defining contempts, 21 O.S.1951 § 565, is almost identical with a statute of Oklahoma Territory, Chap. XIII, S.L.1895. In the case of Smith v. Speed, 11 Okl. 95, 66 P. 511, 55 L.R.A. 402, the Territorial Supreme Court held, in a contempt case, that such statute was contrary to the Organic Act and therefore void, and that the common law prevailed in the territory as to contempts. This decision appears to have influenced this court to apply the common-law definition of contempts in its later decisions, even after the adoption of our present contempt statute. See Smythe v. Smythe, 28 Okl. 266, 114 P. 257; McKee v. De Graffenreid, 33 Okl. 136, 124 P. 303; State ex rel. Short v. Martin, 125 Okl. 51, 256 P. 667; State ex rel. Short v. Owens, 125 Okl. 66, 256 P. 704, 52 A.L.R. 1270; and Brown v. State, 178 Okl. 506, 62 P.2d 1208.

Art. II, § 25, Oklahoma Constitution, provides:

"The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: * * *."

Pursuant to this constitutional mandate the legislature in 21 O.S.1951 § 565, has defined direct contempts as follows:

" * * * Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. * * *."

Undoubtedly the constitutional and statutory provisions, supra, have superseded the common-law in Oklahoma in defining direct contempts. This conclusion is appropriately

expressed in Ex parte Ballew, supra, wherein the court said, 201 P. at page 528:

"The people of this state, by section 25 of the Bill of Rights, directed the Legislature to define contempts; and a statute defining direct and indirect contempts has since been adopted, specifically enumerating what acts shall constitute contempt. Applying the rule of statutory construction, 'Expressio unius est exclusio alterius,' the affirmative description and enumeration of the acts constituting contempt implies a negative as to the exercise of such power in other cases not enumerated."

We hold that it was the intention of the legislature in the enactment of 21 O.S. 1951 § 565, supra, to set forth a complete and all inclusive definition of contempts. The cases of State ex rel. Short v. Martin, supra; State ex rel. Short v. Owens, supra; and Brown v. State, 178 Okl. 506, 62 P.2d 1208, supra, insofar as they hold that the common-law definition of direct contempts is in force in this state, or apply the common-law definition of direct contempts in disposing of the issues therein are hereby expressly overruled. It will be observed that those cases were decided after the adoption of Art. II, § 25, Oklahoma Constitution, and 21 O.S.1951 § 565, supra, and to the extent that they apply common-law definitions of contempt are in conflict therewith.

Having concluded that the definition of direct contempts is limited by the above-quoted statute, we are of the further opinion that the acts charged to have been committed by petitioner are not contempts within the statutory definition. Petitioner is not charged with disorderly or insolent behavior, or with a breach of the peace, noise or disturbance of such a nature as to interrupt the court's proceedings.

We hold that the charges of contempt against petitioner are not within the statutory definition of direct contempts.

During the hearing on these contempt matters respondent said to the County Attorney: "I want you to file a charge on Mr. Best in connection with altering of official records of this court, under the

felony statute for that purpose. * * * Just as soon as you can." Petitioner now prays an order of this court directing respondent to withdraw "his order" to the County Attorney.

■ We are unable to say with confidence that respondent intended to give an "order" to the County Attorney, or that the County Attorney has construed it as an order. A district judge, like any other citizen, has a right to request or suggest the prosecution of any crime, or supposed crime, coming to his attention, but we are furnished no citations of authority which authorize a district court or judge to order a prosecution.

In Perry v. State, 84 Okl.Cr. 211, 181 P. 2d 280, 285, in holding that it is the duty of the County Attorney to determine when to commence a criminal action, in the body of the opinion, the court said:

"By statute, it is provided that no complaint charging a person with any criminal offense may be filed without the endorsement of the County Attorney. 22 O.S.1941 § 258.

"In McGarrah v. State, 10 Okl.Cr. 21, 133 P. 260, 262, this court in discussing the power and duties of a County Attorney stated:

" 'We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned.

" 'It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided.' "

In the absence of proof that the County Attorney has surrendered his official discretion and responsibility to the respondent, we feel that it would be inappropriate to infer that respondent intended to do more than suggest a prosecution. For this reason we decline to require respondent to withdraw his request for prosecution.

■ The action of respondent in filing and pressing the contempt charges is an unauthorized exercise of judicial force and respondent is enjoined and restrained from proceeding further in said actions.

WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY and BLACKBIRD, JJ., concur.

HUNT, J., concurs in conclusion.