John W. FULREADER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. 40767.

Supreme Court of Oklahoma.

Dec. 7, 1965.

Walker & George, by Barth P. Walker, and Max H. Lawrence, Oklahoma City, for plaintiff in error.

Preston A. Trimble, County Atty., of Cleveland County, Norman, for defendant in error.

PER CURIAM.

This appeal involves a contempt action wherein the trial judge held the defendant in the court below, a member of the bar, guilty of direct contempt and assessed a fine against him. Parties will be referred to as they appeared in the trial court.

Plaintiff contends this appeal should be dismissed. The alleged contempt occurred during the trial of a civil action in the District Court of Cleveland County on October 17, 1963. On the same day the defendant was adjudged guilty of direct contempt. On October 23, 1963 the defendant filed in the trial court written notice of his intention to appeal to the Supreme Court of Oklahoma. On November 6, 1963, the defendant lodged the present appeal in this Court by the filing of a petition in error with uncertified transcript attached. Although plaintiff in error filed an uncertified transcript with his petition in error, the basic jurisdictional requirements for appealing upon the original record under the provisions of 12 O.S.1961, § 956.1, 2, and 3 were met when the petition in error was filed. Diehl v. Phillips Petroleum Company, Okl., 376 P.2d 203; Garrett v. Watson, Okl., 342 P.2d 560.

Plaintiff next contends that this appeal should be dismissed for the reason that the appeal should have been prosecuted to the Court of Criminal Appeals instead of this Court. The law is well settled by prior decisions of this Court that proceedings for direct contempt are neither civil nor crimi-

nal in character but are sui generis and this Court has jurisdiction to review an order adjudging one in contempt and imposing punishment therefor. Best v. Evans, Okl., 297 P.2d 379; Brown v. State, 178 Okl. 506, 62 P.2d 1208; Dancy v. Owens, 126 Okl. 37, 258 P. 879.

Lastly plaintiff contends this appeal should be dismissed for the reason that defendant offered no defense in the trial court and paid the fine assessed. Before finding the defendant guilty of contempt the trial court stated, "You may show cause at this time, if any, why you should not be punished for direct contempt for knowingly violating the rules of this Court."

The defendant first stood mute but later offered an explanation for his conduct which the Court found to be "completely unsatisfactory". The defendant did not plead guilty or waive his right to contest the validity of the contempt order.

■ The legal effect of the payment of the fine as it relates to the prosecution of this appeal depends on whether or not the payment was voluntary. If the fine was not paid freely and voluntarily but under protest to prevent the defendant from being deprived of his liberty it cannot be considered voluntary or to constitute a waiver of the right of appeal. Meyberg v. Superior Court of Los Angeles County, 19 Cal.2d 336, 121 P.2d 685; Hume v. Superior Court of Los Angeles County, 17 Cal.2d 506, 110 P. 2d 669; State v. Winthrop, 148 Wash. 526, 269 P. 793, 59 A.L.R. 1265, 1270.

■ In the instant case the trial court after assessing a fine committed the defendant to jail and denied him bail pending appeal. The defendant was incarcerated in jail at the time the fine was paid by his associate attorney Barth P. Walker. Walker states in his affidavit that the fine was paid to secure the release of the defendant from incarceration and was not intended in any respect to be an admission of guilt by the defendant. These facts are not disputed.

Cold logic simply rebels against the payment of the fine under these circumstances being voluntary or constituting an admission of guilt by the defendant.

The motion to dismisss is denied. The case is properly before this Court for decision on the merits.

Turning now to the merits of the controversy. The alleged contempt occurred during the trial of the civil case of Forest Oil Corporation v. Floyd E. Gwin on October 17, 1963. The defendant here was engaged in the cross-examination of the defendant, Gwin. Proceedings occurred as follows:

"By Mr. Fulreader:

Q Do you consider yourself a good driver?

By Mr. Cooper: Objection, invading the province of the Jury.

BY THE COURT: Sustained.

Q Mr. Gwin, have you ever been convicted of a crime for the violation of a State or a Federal Statute?

By Mr. Cooper: Object to that as an incompetent question. I withdraw the objection, I don't want the Jury to think he has and I'm sure he hasn't. Go ahead and answer the question.

A What was the question, sir?

Q Have you ever been convicted of a crime of a State or a Federal Statute?

A What does that mean?

Q Well, have you ever violated any laws?

BY THE COURT: Now, don't answer that question.

By Mr. Cooper: If the Court please, I don't think counsel is asking the proper questions. I have no objection to him asking the proper questions but I don't think these are proper.

BY THE COURT: The question is, have you ever been convicted of a crime?

A No, sir.

Q You have never been convicted of a crime?

A (No answer).

Q Were you brought into the—did you go through a trial in City Court of Norman, when the State was the Plaintiff—

By Mr. Cooper: Object to counsel's question and move that a mistrial be granted.

By Mr. Fulreader: May I approach the Bench, sir?

BY THE COURT: You sure may and you better be prepared to show good cause why this shouldn't be sustained at your expense.

WHEREUPON, counsel approach the Bench and confer with the Court outside the record and the hearing of the Jury, after which the following proceedings were had:

BY THE COURT: The motion for a mistrial is sustained and the costs are taxed against the Plaintiff and you may show cause at this time, if any, why you should not be punished for direct contempt for knowingly violating the rules of this Court.

BY THE COURT: Ladies and gentlemen of the Jury, the Court has declared a mistrial in this case and you are excused from further consideration of the case and excused from further attendance at the Court until nine o'clock in the morning.

WHEREUPON, the Jury left the Box and the Courtroom and the following proceedings were had:

BY THE COURT: Get your arms off this Bench. Do you have any cause to show?

By Mr. Fulreader: No, I have none.

BY THE COURT: Call the Sheriff.

By Mr. Fulreader: May I approach the Bench?

BY THE COURT: You may say whatever you've got to say from right there.

By Mr. Fulreader: My understanding is that the statement of law is that you can show a conviction of a crime, under the Statutes, Title 12—381, and there are cases that set this forth. It allows you to set forth four elements, you can set forth the conviction of the crime, the date, the Court, and the Judge, I believe, the Judge's name.

BY THE COURT: How many jurors reported in this morning, Mrs. Burke?

By Mrs. Burke: (Court Clerk) I will have to check and see.

BY THE COURT: Would you count them up, please?

By Mr. Fulreader: On the basis I was asking this question.

BY THE COURT: Mr. Fulreader, the Court finds your explanation completely unsatisfactory, the Court further finds that this is the second trial of this case in which your firm through its representative, has committed some misconduct requiring the Court to declare a mistrial. Your conduct has been so gross, so out of line that this Court has no choice but to find you in direct contempt of Court. And it will be the judgment of this Court that your punishment be fixed at a fine equivalent to the cost of the Jurors required to pick this panel, or this Jury here this morning. It will be the further Order of the Court, that you be committed to the Custody of the Sheriff until those costs are paid. How many Jurors reported here this morning?

By Mrs. Burke: Sixty-five.

BY THE COURT: My calculation of the cost of the attendance of sixty-five Jurors, at $7.50 per day, totals $487.50. You are ordered committed to the custody of the Sheriff until that sum is paid. You may take him, Blanche.

By Mr. Fulreader: Will you set forth bail on that?

BY THE COURT: If there is any bail to be fixed it will be fixed by an Appellate Court and not by this one.

\* \* \*

WHEREUPON, counsel left the Courtroom in the custody of one of the Deputy Sheriffs of Cleveland County, and Court was adjourned, and this was all the pro-

ceedings had on the hearing on direct contempt of Court during the trial of this cause."

■ "Contempts of court in this state are defined by constitutional and statutory definitions and not by the common law". Best v. Evans, Okl., 297 P.2d 379; In re Young, Okl.Cr., 325 P.2d 85.

The governing statute is, 21 O.S.1961, § 565, which reads in part as follows:

"* * * Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. * * *"

It was said in, In re Young, supra, "No one doubts either the right or duty of a court to punish as contempt disorderly and contumelious behavior, breaches of the peace, or any wilful disturbance in its presence". The Federal Court in Goldstein v. United States (CCA, 8, 1933) 63 F.2d 609, comments that lawyers "owe to the court, because of the position he occupies, the utmost deference and respect * * * the court owes to them an equal obligation of courtesy * * * and consideration".

■ The "disorderly and insolent behavior" referred to in 21 O.S.1961, § 565, supra has been defined by the Oklahoma Court as being "conduct that is unruly, tumultuous, insulting or disrespectful". Best v. Evans, supra.

The vital question here is, "Was the conduct of the defendant unruly, tumultuous, insulting or disrespectful or was his behavior disorderly or disrespectful"?

The defendant as counsel for one of the parties was engaged in the cross-examination of the opposing party in a contested jury trial. Defendant asked the opposing party if he considered himself a good driver. Objection to this question was sustained. Defendant inquired of the opposing party if he had ever been convicted of a crime for the violation of a State or Federal Statute. Objections were first interposed and then withdrawn. The witness asked that the question be repeated. This was done and the witness replied, "What does that mean?" The attorney inquired, "Well, have you ever violated any laws?" The Court immediately advised the party, "Now, don't answer that question" The opposing attorney interposed objections. The Court took over the questioning and asked the witness, "The question is, have you ever been convicted of a crime?" The witness replied, "No sir". This was followed by a question, "You have never been convicted of a crime?" to which there was no answer. The attorney then propounded the question which precipitated the contempt order. It is as follows:

"Were you brought into the—did you go through a trial in the City Court of Norman, when the State was the Plaintiff?"

The opposing attorney moved for mistrial. The Court sustained the motion for mistrial and found the defendant guilty of contempt "for knowingly violating the rules of this court". The Court stated, "Your conduct has been so gross, so out of line that this Court has no choice but to find you in direct contempt of Court." The Court assessed a fine in the amount of $487.50 calculated on the per diem cost of the jurors for one day's service and committed the defendant to the custody of the Sheriff until the fine was paid.

■ The record does not sustain the order of the trial court adjudging the defendant attorney guilty of contempt. While the Court found the defendant guilty of "knowingly violating the rules of this Court" there is no evidence establishing the rule he is supposed to have violated or his violation of any rule of the Court. It is true the defendant vigorously represented the interests

**780**

of his client, possibly a little too much so, but "[A] common law trial is and always should be an adversary proceeding". Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

In the case of In Matter of Criminal Contempt of McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434, reversing Pamelee Transp. Co. v. Keeshin, 7 Cir., 294 F.2d 310, the Court said,

> "The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of Court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. * * it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their client's cases".

The propriety of the question propounded by the defendant attorney is debatable. Greene v. Humphrey, Okl., 274 P.2d 535. The mere asking of the question did not constitute contempt.

Although the defendant was persistent in presenting his client's case no lack of respect for the Court was exhibited. In the tense colloquy with the trial court the defendant attorney was at all times respectful and courteous. In seeking permission to address the Court he politely inquired, "May I approach the bench?" To one of these requests the Court replied, "Get your arms off the Bench." and "You may say whatever you've got to say from right there."

The conduct of the defendant attorney was not "unruly, tumultuous, insulting or disrespectful" nor was his behavior "disorderly and contumelious". Although possibly ill-advised, his conduct was not contemptuous.

The judgment of the trial Court is therefore reversed and this cause is remanded to the trial Court with directions to dismiss the contempt proceedings and refund to the defendant the fine assessed.

HALLEY, C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.