**Ray Gene SMITH, Appellant,**

v.

**The STATE of Oklahoma ex rel. J. Winston RABURN, District Judge, Appellee.**

**No. M–74–759.**

Court of Criminal Appeals of Oklahoma.

June 2, 1975.

Bill Sexton, Lawton, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. McCurdy, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Ray Gene Smith, hereinafter referred to as defendant, was convicted of Direct Criminal Contempt of Court in Case No. CRF–74–965 of the District Court, Comanche County. He was sentenced to pay a fine of Five Hundred ($500.00) dollars.

Ray Gene Smith is an attorney, duly licensed to practice law in the State of Texas; he is not a member of the bar of the State of Oklahoma. He applied for and received special permission to represent a defendant charged with the crime of Sale of Marihuana before the District Court, Comanche County. The conduct which we are called upon to review occurred during the trial of that criminal case.

The judgment and sentence upon this conviction of contempt specifically states that ". . . Ray Gene Smith is guilty of Direct Criminal Contempt of this Court by reason of his conduct in the case of the State of Oklahoma vs. Gary Sorrell on the 18th and 19th days of June, 1974, in that on five separate and distinct times he, the said Ray Gene Smith, repeated questions to which the Court had previously sustained objections, all as contained in the partial transcript of said case, attached hereto, marked Exhibit A and made a part hereof by reference thereto." The attached transcript records the following which occurred during the voir dire of the jury:

"MR. SMITH: * * * For example in this particular case, the penalty is two to ten years, and up to a $5,000.00 fine, without parole, without probation—

"MR. LILE: Your Honor, I would object—

"MR. SMITH: —without deferred sentence—

"BY THE COURT: Yes, Mr. Smith, the court is going to limit you to questions of the jury concerning their qualifications. The objection is sustained with exception.

"MR. SMITH: Your Honor—

"BY THE COURT: The objection was sustained with exception.

"MR. SMITH: Excuse me just a minute. I am not familiar with something.

"(Mr. Smith conferred with Mr. Sexton)

"MR. SMITH: May I approach the bench, Your Honor?

"BY THE COURT: No, sir. Let's go on.

"MR. SMITH: Note our exception."

The transcript reflects that later during the voir dire of the same jury Mr. Smith again referred to the fact that drug offenses are without probation or deferred sentences:

"MR. SMITH: * * * Now, since the law is as I have told you: two to ten years with no probation, no deferred sentence—

"MR. LILE: Objection again, Your Honor; same reasons; incompetent, irrelevant and immaterial.

"BY THE COURT: And the court will advise counsel that an objection to the same question is only sustained one time. I will do it the second time in this instance, but do not expect to sustain it the third time, with an exception to the Defendant."

The transcript reflects no further transgressions by Mr. Smith during the course of voir dire of the jury, but records the following during the cross-examination of a witness for the State, Jeanette Warren:

"Q. Did you know that if you were found guilty, there wouldn't be any— there couldn't be, under Oklahoma Statutes—

"MR. LILE: Objection, Your Honor.

"BY THE COURT: The objection will be sustain, with exceptions.

"Q. Janet, [sic] do you know the difference between possession and sale of any—of marijuana?

"MR. LILE: Your Honor, I object to this line of questioning in that it has gone on for some fifteen minutes—

"BY THE COURT: As to the same objection to that question.

"MR. LILE: Object to that question.

"MR. SMITH: What? I didn't understand—

"BY THE COURT: It's incompetent, irrelevant and immaterial. With exceptions.

"MR. SMITH: I think it goes to the—

"BY THE COURT: I didn't ask for any argument."

Subsequently, during the course of the trial the State called as a witness, Dean Nowe. On cross-examination the record reveals the following question and objection:

"Q. You're familiar with the difference between the penalty of possession and sale, are you not?

"MR. LILE: Objection, Your Honor, incompetent, irrelevant and immaterial.

"BY THE COURT: The objection will be sustained, with exception.

"MR. SMITH: Note our exception."

That cross-examination was concluded and the State conducted a re-direct examination. Then, on re-cross-examination of the witness Nowe, the following question was asked:

"Q. You knew she faced two to ten in jail, did you not?

"A. Yes, sir.

"Q. And you knew that if she was found guilty there was no probation, no parole—

"MR. LILE: Objection, Your Honor.

"Q. And no pardon.

"BY THE COURT: Yes. Let's take a recess. I believe this is an appropriate time."

The record then reflects the following colloquy which took place between the judge and Mr. Smith during the recess and out of the presence of the jury:

"BY THE COURT: All right, let the record show that this is outside—Mr. Lile, we're going to make a record here. Let the record show this is outside the hearing of the jury. The last objection is sustained. That's the fourth time I have sustained it. Any other time that I need to sustain it, I will consider it contempt of court, and I will ask you what I need to sentence you to see that it doesn't happen again. The court is not going to permit any argument about deferred, no probation, or no suspended sentence, Mr. Smith. You have an exception to that ruling. Now, the next time, what do I need to say that the punishment will be to see that it is stopped?

"MR. SMITH: Well, Your Honor—

"BY THE COURT: And you have an exception to this ruling.

"MR. SMITH: Since we're not in the presence of the jury—

"BY THE COURT: I don't want argument; I just want a statement of what I should consider the punishment to be to see that you stop.

"MR. SMITH: Without letting me make an argument to you, you can't understand, perhaps the reason that I—

"BY THE COURT: I consider the reason—there can only be two reasons; one is that you are inadvertently forgetting—

"MR. SMITH: I did this time; that's true.

"BY THE COURT: O.K. And I am going to see that that doesn't happen again. The other would be that you have a question about whether I am right or not, and I consider that contempt of court—

"MR. SMITH: Well, that—

"BY THE COURT: And I shall consider it the other the next time.

"MR. SMITH: It was pure error this time—

"BY THE COURT: Very well, the next time, if it happens again, I shall consider it contempt of court and you will spend

ten days in our county jail. Now, we will take a ten-minute recess."

After that recess the trial continued with Mr. Nowe's examination. Subsequently, a Mr. Rodney Bassell was called as a witness and testified; a Mr. Bill Caveny was called as a witness and testified; and finally Mr. Jim Ingram was called as a witness and testified on direct examination. During cross-examination by Mr. Smith of that witness, the following question was asked:

"Q. And you did not go out there and make that arrest for possession of that amount, but you went out to let that sale go through, is that not true?

"MR. LILE: Objection, Your Honor, incompetent, irrelevant and immaterial.

"BY THE COURT: Objection is overruled; you may answer.

"Q. Is that true? You knew that you could arrest for possession, but you went out to let a sale go through, isn't that true?

"A. Yes, sir.

"Q. And there's considerable difference in penalty between the two, is there not?

"MR. LILE: Objection, Your Honor; incompetent, irrelevant and immaterial.

"BY THE COURT: Yes, I think it's time to quit for the evening, since we're going to have to have a conference outside."

After excusing the jury, the judge made this statement:

"BY THE COURT: I believe the court cautioned you at the last recess that the court expected to hear no more questions about punishment of these particular offenses, and the court, I believe, advised you at that time that it would be considered to be contempt of court if he heard anything further. Therefore, at this time I am going to order you to appear before me on the 19th day of July, 1974, at nine-thirty in the morning to show cause why you should not be punished

for contempt, and at that time I will be prepared to listen to argument. The court will be in recess now in this case until nine o'clock in the morning at Court Room A."

That hearing was held on the appointed date and at its conclusion Smith was adjudicated in direct contempt of court.

 In this State the boundaries of the power to punish for contempt of court are fixed by constitutional and statutory provisions and the statutory definition of contempt has superceded that of the common law. In Re Young, Okl.Cr., 325 P.2d 85 (1958); Best v. Evans, Okl., 297 P.2d 379 (1956). Direct contempt is defined by 21 O.S.1971, § 565 thus:

". . . Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. . . ."

The purpose of the power to punish for direct contempt is to protect the due administration of justice from obstruction. Thus this Court has held that direct criminal contempt consists of ". . . conduct that is directed against the dignity and authority of the court or a judge acting judicially, obstructive of the administration of justice and disrespectful of the majesty of the state." Roselle v. State, Okl.Cr., 503 P.2d 1293 (1972); see also, Ex parte Stephenson, 89 Okl.Cr. 427, 209 P.2d 515 (1949).

In the recent case of State ex rel. Young v. Woodson, Okl., 522 P.2d 1035 (1974), the Supreme Court of Oklahoma adopted certain standards of the American Bar Association Project on Standards of Criminal Justice relating to the function of the trial

judge with respect to the use of the contempt power. Those standards are applicable to this case and we repeat them here:

"1. INHERENT POWER OF THE COURT.

"The court has the inherent power to punish any contempt in order to protect the rights of the parties and the interests of the public by assuring that the administration of justice shall not be thwarted. The trial judge has the power to cite and if necessary punish summarily anyone who, in his presence in open court, willfully obstructs the course of judicial proceedings after an opportunity to be heard has been afforded.

"2. ADMONITION AND WARNING.

"No sanction other than censure should be imposed by the trial judge unless (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

"3. NOTICE OF INTENT TO USE CONTEMPT POWER: POSTPONEMENT OF ADJUDICATION.

"(a) The trial judge should, as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, inform the alleged offender of his intention to institute such proceedings.

"(b) The trial judge should consider the advisability of deferring adjudication of contempt for courtroom misconduct of a defendant, an attorney or a witness until after trial, and should defer such a proceeding unless prompt punishment is imperative.

"4. NOTICE OF CHARGES AND OPPORTUNITY TO BE HEARD.

"Before imposing any punishment for contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

"5. REFERRAL TO ANOTHER JUDGE.

"The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge, if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned."

The appellant herein raises two questions: First, whether his conduct as an advocate at trial comes within the definition of contemptuous behavior, and second, whether the trial judge exceeded his power to punish for contempt when he found Smith in contempt for asking a question which was beyond the scope of the court's prior admonition to him.

The appellant asserts that his conduct does not come within the definition of contempt because he was merely acting as an advocate and his attitude was not insolent nor his behavior disorderly.

■ The area in which an attorney's zealous devotion to a client's interest shades into contempt of court is a difficult one. In Fulreader v. State, Okl., 408 P.2d 775 (1965), the Oklahoma Supreme Court stated in the fourth paragraph of the syllabus: "Vigorous assertion of the right of his client by an attorney, although unsound, in the absence of other objectionable conduct of the attorney, does not constitute contempt." Nonetheless, it is clear that a lawyer may be held in contempt when he defies the court by persisting in asking questions or pursuing an argument which the trial court has excluded providing such persistence amounts to an obstruction of the conduct of the trial. Hallinan v. United States, 182 F.2d 880 (9th Cir. 1950); Caldwell v. United States, 28 F.2d 684 (9th Cir. 1928); cf. Glasgow v. State, Okl.Cr., 328 P.2d 185 (1958); Williams v. State, 19

Okl.Cr. 307, 199 P. 400 (1921). Certain questions, *per se*, imperil the fair conduct of a criminal trial. Cf. Williams v. State, supra.

The questions which formed the basis of the finding of contempt in this case, however, are not per se disruptive of a criminal trial. While irrelevant and improper when put to a prospective juror on voir dire, the question of whether a sentence for sale of an illegal drug may be suspended or deferred may be a proper and relevant one when put to a witness who is testifying against a defendant in return for a reduction from sale to possession of a charge against that witness.

 Just as the defendant's questions here were not per se disruptive of the orderly administration of a fair trial, his manner toward the court was neither insolent nor disorderly. Under these circumstances even if his conduct could be said to exceed a good faith effort to present his client's case and to come within the definition of contempt, we do not believe that such facts present a case where "it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous," as is required by the second of the standards recited above. Absent a clear showing of disruptive conduct which was willfully contemptuous, it is required by the same standard that the conduct punished be preceded by "a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition."

The procedure followed in this case was violative of that standard. Smith was adjudged guilty of contempt for repeating questions on five separate and distinct times, as recited in the judgment and sentence. Of the instances of repeated questions which the trial court found contemptuous, only the last one, the one put to Mr. Jim Ingram, was preceded by such a warning. That warning was in these words:

". . . The court is not going to permit any argument about deferred, no probation, or no suspended sentence, Mr. Smith. You have an exception to that ruling. Now, the next time, what do I need to say that the punishment will be to see that it is stopped?

\*　　\*　　\*　　\*　　\*　　\*

"BY THE COURT: Very well, the next time, if it happens again, I shall consider it contempt of court and you will spend ten days in our county jail. . . ."

That warning was given during the cross-examination of the witness Nowe. To the third witness following Mr. Nowe, the defendant attorney put this question:

"Q. Is that true? You knew that you could arrest for possession, but you went out to let a sale go through, isn't that true?

"A. Yes, sir.

"Q. And there's considerable difference in penalty between the two, is there not?

The judge immediately indicated his intention to institute contempt proceedings against Smith. The trial court's earlier warning prohibited only the mention of the statutory prohibition against deferred or suspended sentences upon conviction of sale of illegal drugs. We do not find that the above question was in contempt of that ruling. As the United States Circuit Court of Appeals for the Ninth Circuit stated in Caldwell v. United States, 28 F.2d 684 (1928): "[U]nless a ruling is amplified by an explanation of the reasons therefor attorneys, especially in the course of rapid cross-examination, often put a question in different form, as a matter of caution, and with no design to evade the ruling of the court, or to be contumacious." And, as the same circuit stated more recently: "It is often difficult for an attorney to strike an effective accommodation between his client's interests and his obligations to meet the demands of the judge before whom he must argue his case. Consequently, when, in attempting to reach an appropriate compromise, one transgresses a court order, he

is not necessarily guilty of contempt." Weiss v. Burr, 484 F.2d 973, 981 (1973).

We are of the opinion that the record before us does not support a finding of contempt. The judgment and sentence appealed from is, accordingly, reversed and remanded with instructions to dismiss.

BUSSEY and BLISS, JJ., concur.