**H.B. WATSON, Jr., Appellant,**

v.

**The STATE of Oklahoma ex rel. John W. MICHAEL, District Judge of Grant County, Appellee.**

**No. 69975.**

Supreme Court of Oklahoma.

July 19, 1989.

Watson & McKenzie by Sharon Taylor Thomas, and Janis W. Preslar, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., and Weldon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

HODGES, Justice.

The case on appeal before us involves a contempt order issued by the appellee (the court) against the appellant (Mr. Watson) during the course of a trial involving issues of oil and gas drainage. Prior to the trial a motion in limine was argued and the court ruled that no evidence was to be presented by any party regarding the amount of royalties that had been received by the plaintiff below from any interest he might have in wells offsetting the allegedly drained well. At trial the plaintiff testified on direct examination that he had been told if the oil and gas field in question were unitized plaintiff would receive "forty or forty five thousand dollars a month." Mr. Wat-

son argues in his appeal brief that this statement "opened the door to evidence about plaintiff's income" thereby justifying Mr. Watson's cross-examination of the plaintiff which proceeded in pertinent part as follows:

A. You've been getting paid your royalty on the Watkins well by TXO, have you not?

A. Yes.

Q. And on the Manchester?

A. Yes.

Q. And actually Mr. Benavides helped you get paid from TXO for your royalty, didn't he?

A. Well, he told me they hadn't paid me and it was getting pretty late. I had been fighting with them to get them to pay me. They were awful slow on issuing their first checks but after that they paid pretty well.

Q. After Mr. Benavides called that to the attention of the Corporation Commission it wasn't a day or two until they brought you a big check, wasn't it?

A. That's true.

Q. How much was that check?

A. A hundred thirty five thousand dollars.

Immediately following this testimony the opposing counsel approached the bench and moved that Mr. Watson be sanctioned for introducing evidence into the record that had been specifically prohibited by the ruling on the motion in limine. In response to the motion Mr. Watson argued that not only had the testimony on direct examination raised a question as to plaintiff's income but that the plaintiff was suing Mr. Watson's client (the defendant below) for punitive damages and the quoted testimony refuted the charges that the plaintiff had been dealt with by the defendant in a deliberately unfair manner. At the close of this argument the court made the following statement:

The court: I ordered you not to bring up that issue and not to speak dollars. You failed to follow that order. I consider that contempt of this court's order and I think an appropriate sanction in this instance would be a fine of $1,000.00.

Following this Mr. Watson gave notice of his appeal and asked that the fine be stayed to which the court agreed.

## I.

On appeal Mr. Watson contends that he did not violate the court's motion in limine ruling because the testimony elicited on cross-examination was non-specific as to the source of the $135,000 check. He argues in his appeal brief that "there was no evidence showing that the question found to be contemptuous pertained to production income from a well other than the Grant well." This position is less than convincing.

The relevant portion of the transcript set out above relates that the $135,000 check was from TXO. TXO operates wells offsetting the contested area and the plaintiff owns interests in those offsetting wells. The clear implication of receiving a royalty check from TXO is that this is income from those offsetting wells that TXO operates. There is nothing whatsoever to relate the check to the Grant well in the quoted portion of the transcript. The testimony concerning the specific amount of the $135,000 check was prohibited by the court's ruling on the motion in limine. We find, therefore, that Mr. Watson, by introducing the evidence, did violate the court's ruling.

## II.

Mr. Watson's next argument is that, if he did violate the court's order, it was not violated contemptuously or willfully. Therefore, no punishment for contempt of court is in order. We find this reasoning persuasive.

In Oklahoma contempts of court are governed by the constitution and statutes, not by common law. *Best v. Evans,* 297 P.2d 379 (Okla.1956). 21 O.S.1981 § 565 defines contempt as follows.

Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of *disorderly or insolent behavior* committed dur-

ing the session of the court and in its immediate view, and presence, and of the unlawful and willful refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court. (Emphasis added.)

It has been decided that the "disorderly or insolent behavior" referred to by the above statute means "conduct that is unruly, tumultuous, insulting or disrespectful." *Fulreader v. State*, 408 P.2d 775 (Okla.1965) quoting *Best v. Evans*, supra. In *Fulreader* the Supreme Court found the defendant's conduct free of contempt due to the fact that "although the defendant was persistent in presenting his client's case no lack of respect for the court was exhibited." Nine years after the *Fulreader* decision was handed down this Court formally adopted the American Bar Association Standards Relating to the Function of the Trial Judge as part of the Court Rules of Procedure. *State ex rel. Young v. Woodson*, 522 P.2d 1035 (Okla.1974). The second standard sets out the conditions under which sanctions, more severe than censure, are warranted. It reads as follows:

2. ADMONITION AND WARNING.

No sanction other than censure should be imposed by the trial judge unless (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

This standard was employed in the reversal of the trial court in *Smith v. State ex rel Raburn*, 536 P.2d 976 (Okla.Cr.1975). The case concerned an attorney who was cited for contempt by the lower court because he repeatedly asked questions to which the court had previously sustained objections. The Court of Criminal Appeals found the attorney's questions were not, per se, disruptive of the conduct of trial nor was his manner insolent or disorderly. The opinion goes on to state:

"Under these circumstances even if his conduct could be said to exceed a good faith effort to present his client's case and to come within the definition of contempt, we do not believe that such facts present a case where 'it is clear from the identity of the offender and the character of his acts that disruptive conduct was wilfully contemptuous,' as is required by the second of the [American Bar Association] standards ..."

■ The facts on appeal do not show any signs of willfully contemptuous conduct on the part of Mr. Watson. The single question he asked of the witness in regard to the amount of the check, while technically violating the motion in limine ruling, was not disruptive nor was Mr. Watson's manner of asking the question in any way defiant. His response to the opposing counsel's motion for sanctions was nothing less than that of an attorney ardently defending his client's position. Once the trial court ruled that he had violated the motion in limine ruling, Mr. Watson continued his cross-examination with no show of disrespect and he did not raise the matter again. The question cited by the court in holding Mr. Watson in contempt is not sufficient to warrant any punishment for contempt of court. The situation before us does not contain the necessary elements of contempt as defined by the ABA standards and adopted by this Court. We find that without proof of a willful disruption of the court's proceedings or a showing of a complete disregard for the court and its judicial powers the act complained of cannot fall within the purview of contempt of court that warrants punishment by fine or imprisonment.

As we have decided that the court erred in holding Mr. Watson in contempt of court and assessing a fine against him, we do not address the other issues raised on appeal.

REVERSED.

OPALA, V.C.J., and LAVENDER, DOOLIN, WILSON, KAUGER and SUMMERS, JJ.

SIMMS, J., concurs specially.

HARGRAVE, C.J., concurs in result.

SIMMS, Justice, concurring specially:

I concur specially because *punishment for contempt was imposed* against Mr. Watson without any prior notice of the charges or an opportunity to be heard and to adduce evidence in violation of Okl. Const., art. 2, sec. 25 and 21 O.S.Supp.1988 § 565.1; and the rules promulgated by this Court in *State, ex rel. Young v. Woodson*, Okl., 522 P.2d 1035 (1974).