## MORGAN v. NATIONAL BANK OF COMMERCE OF SHAWNEE.

No. 10711—Opinion Filed May 8, 1923.

Rehearing Denied July 24, 1923.

(Syllabus.)

### 1. Contempt—Direct and Indirect — Statutory Provisions.

According to the provisions of section 1697, Comp. Stats. 1921, contempts of court are classed as direct and indirect contempts.

### 2. Same—Nature of Proceedings.

The proceedings for the punishment of contempt are of two classes: First, those instituted and prosecuted to preserve the power and vindicate the dignity of the court, where the punishment imposed is punitive in its nature; such a proceeding is in the nature of a criminal proceeding. Second, where the proceedings are instituted to preserve and enforce the rights of individuals to an action in order to afford remedial relief; such a proceeding is civil in its nature.

### 3. Same — Indirect Contempt — Procedure —Necessary Complaint.

In a proceeding in an indirect contempt, in order to vest the court with jurisdiction it is necessary that a complaint be filed, stating the facts constituting the contempt, and the facts should be stated with sufficient particularity so as to inform the accused as to the nature of the proceeding instituted against him, and a complaint failing to state such facts is fatally defective.

### 4. Contempt—Burden of Proof.

In the trial of a proceeding of contempt the burden of proof is upon the prosecution or complainant to establish the material allegations of the petition, unless the accused admits the violation of an order of the court.

### 5. Same—Indirect Contempt — Sufficiency of Proof.

In the trial of the accused for indirect contempt in a proceeding civil in its nature, the prosecution must prove the contemnor guilty of the acts constituting the contempt by clear and convincing evidence.

### 6. Same—Conviction—Reversal.

Record examined, and held, that the judgment of conviction be reversed.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Proceedings instituted by the National Bank of Commerce of Shawnee against N. C. Morgan as for a civil contempt. On demand of N. C. Morgan, he was granted a jury trial, which resulted in a verdict of guilty. Judgment against Morgan in accordance with the verdict, and he appealed. Upon the death of plaintiff in error, cause was revived in the name of Ross Johnston, administrator. Reversed.

A. M. Baldwin, for plaintiff in error.

Kittie C. Sturdevant and Lydick & Arrington, for defendant in error.

KENNAMER, J. N. C. Morgan, the plaintiff in error, was found guilty in the superior court of Shawnee, Okla., of contempt on the 10th day of January, 1919. Upon the verdict of the jury finding him guilty, the court entered judgment decreeing Morgan, the accused, guilty of contempt and requiring him to pay $86.05 taxed as cost and to pay into the hands of the receiver in the original action $500; in default of the payment of said amounts, that the said N. C. Morgan be confined to the county jail of Pottawatomie county until said fine and cost be paid, provided that such confinement, in the event of the failure of the said Morgan to pay said amounts, should not exceed four months.

N. C. Morgan, as plaintiff in error, prosecutes this appeal to reverse the judgment of the trial court. Since the filing of the appeal in this court the plaintiff in error, N. C. Morgan, has died, and the cause has been revived in the name of Ross Johnston, the administrator of the estate of N. C. Morgan, deceased.

The contempt proceedings originated in an original action instituted by the National Bank of Commerce of Shawnee, plaintiff,

against John Nickles, defendant; the plaintiff having instituted the action to foreclose a chattel mortgage executed by the defendant, Nickels, to the plaintiff bank.

J. F. Earnest was appointed receiver in the action and directed to take possession of 80 acres of cotton raised by the defendant during the year 1918 and to pick and gather the cotton, to be disposed of according to the orders of the court. Pursuant to the order of the court appointing a receiver, he qualified and entered upon the discharge of his duties and made a contract with N. C. Morgan to pick and haul to the market the cotton for which he had been appointed receiver.

On the 31st day of December, 1918, the plaintiff, National Bank of Commerce, filed with the court its complaint charging N. C. Morgan with contempt.

The substance of the material allegations necessary for consideration are: That N. C. Morgan delivered unto Mrs. John Nickels, wife of the defendant in the action, C. M. Hayes, and R. V. Hayes certain portions of the cotton for which J. F. Earnest was appointed receiver; that at the time of the delivery Morgan knew that the cotton, by reason of the receivership, was in the custody of the law, and that he knew he had no right or authority to deliver the cotton to said parties; that the parties receiving the cotton knew they had no right to receive the same.

The petition alleged that N. C. Morgan, Mrs. John Nickels, C. M. Hayes, and R. V. Hayes were all guilty of contempt of court, and prayed that each of them be cited by the court for contempt thereof upon the accusation as set out; that each be notified in writing of the accusation against them, and each of them show cause, if any, why they should not be punished as for contempt of court, and that the court otherwise proceed to do things necessary in and about the premises toward the prosecution of said parties, and each and all of them, for contempt of court.

The complaint was signed by the attorneys of record for the plaintiff in the action and was verified by the affidavit of the receiver.

The proceedings for contempt were abandoned as to all of the parties except N. C. Morgan. He appeared and filed a response to the accusation, in which he denied each and every allegation except such as were admitted. He admitted the appointment of Earnest as receiver in the cause and demanded a jury trial. His response was by him verified as being true.

When the case was called on for trial the respondent, Morgan, objected to the introduction of any evidence, upon the ground that the complaint failed to state facts sufficient to constitute a cause of contempt against the respondent, Morgan. The objection was overruled and exceptions allowed. The alleged error of the trial court in overruling the objection to the introduction of any evidence in support of the plaintiff's complaint is presented by counsel for the plaintiff in error under his first assignment of error. In our view of this case a consideration of this assignment is sufficient to dispose of this appeal.

It appears from an examination of the record that the plaintiff and the receiver in the action were attempting to proceed against respondent Morgan for an indirect contempt by a proceeding in the nature of a civil proceeding; but an examination of the complaint filed, the relief asked, the proceedings on the trial, and the judgment of the court fining the respondent $500 and costs, and in default of payment committing him to jail until he paid the fine and costs or for a period not to exceed four months, makes it clear that the proceedings developed into something more than a civil proceeding in legal effect.

Article 2, sec. 25, of the Constitution provides:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given." (Bunn's Ed. sec. 34).

Sections 1697-1700, Comp. Stats. 1921, read:

"1697. Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall

be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court.

"1698. Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court.

"1699. In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury.

"1700. Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court."

It is clear from a consideration of these constitutional and statutory provisions that contempt has been classified into two classes—direct and indirect contempt—and made punishable by fine or imprisonment, or both, at the discretion of the court assessing the punishment. It will be observed from the consideration of these constitutional and statutory provisions that an attempt has been made by the Legislature to classify contempts into criminal and civil, but that the punishment provided for in section 1698, supra, is indicative of punishment usually imposed for the commission of an offense. Indeed, it is quite obvious that no one may be imprisoned except for the nonpayment of a fine or penalty.

Article 2, sec. 13, of the Constitution provides:

"Imprisonment for debt is prohibited, except for the nonpayment of fines and penalties imposed for the violation of law." (Bunn's Ed., sec. 22.)

An examination of the authorities discloses that much difficulty has been encountered by the courts in determining the nature of the proceedings followed for the purpose of punishing offenders for contempt. However, it appears to be well settled by the weight of authority that the proceedings for contempt are of two classes: First, those instituted and prosecuted to preserve the power and vindicate the dignity of the court, where punishment is imposed for disobedience of its orders. Second, where the proceedings are instituted to preserve and enforce the rights of private parties to actions and, to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which such parties are entitled. 13 C. J., sec. 881.

This court in the case of Wells v. Wells, 46 Okla. 88, 148 Pac. 723, held:

"A proceeding against one for civil contempt is prosecuted in the original action and in the name of the injured party and for his benefit, while proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause."

In this case the court quoted with approval the following language from the case of Gompers v. Buck Stove & Range Co., 221 U. S. 418, p. 441, 31 Sup. Ct. 492, 55 L. Ed. 797:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes: It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co., 194 U. S. 329, 24 Sup. Ct. 665, 48 L. Ed. 1002. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt, the punishment is remedial, and for the benefit of the complainant. But, if it is for criminal contempt, the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted, not only in the imposition of a fine payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. For example, if a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless there were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in

this class of cases, therefore, is not to vindicate the authority of the law, but is remedial, and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in Re Nevitt, 54 C. C. A. 622, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

"It is true that either form of imprisonment has also an incidental effect; for if the case is civil, and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt, and the imprisonment is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change imprisonment which is merely coercive and remedial into that which is solely punitive in character, or vice versa. * * *"

It will be observed in the case at bar that the respondent, Morgan, was not a party to the original action. He had not by the court been ordered to do anything, and it must be plain, if he had committed any act subjecting him to be proceeded against for contempt of court, it must have been some act interfering with the custody and possession of the receiver of the property involved in the action. Such act is an interruption of the administration of justice. It constitutes and is by many authorities classed as a constructive contempt. See 13 C. J., p. 5, sec. 4, and authorities therein cited.

An examination of the complaint filed in the instant case discloses that it is impossible to tell from its allegations whether or not the respondent was being proceeded against by a civil proceeding in nature for the use and benefit of the plaintiff in the action or for the vindication of the dignity of the court. Such a complaint is fatally defective. Under the statute the respondent

is entitled to know what kind of proceeding he is to defend, whether a civil or criminal proceeding, and the purpose for which he is to be subjected to punishment. As was held in the case of Gompers v. Buck Stove & Range Co., supra, whether the proceedings be civil or criminal, there must be an allegation that the defendant or respondent disobeyed an order of the court. Under the statute, supra, it should allege willful disobedience of the order or willful resistance to its execution.

Under the statute, to constitute an indirect contempt, the disobedience of the court's order must be willful, and facts should be alleged in the complaint such as to show a willful disobedience of the court's order. The only possible remedial relief to which the plaintiff was entitled was the imposition of a fine for its use in compensation of some injury suffered by reason of the wrongful acts of the respondent in dissipating property held by the receiver for the use of the plaintiff. The complaint does not allege, nor does the evidence show, that any of the alleged wrongful acts of the respondent in any way injured the complainant. In this situation the court committed reversible error in not sustaining the objections to the introduction of any evidence in support of the complaint. If the respondent had merely done some wrongful act which obstructed the administration of justice and brought the court or judge into disrespect, but which did not in the slightest degree cause any pecuniary injury to any party to the action, the contempt proceedings should be instituted and tried as a criminal contempt for the purpose of vindicating the power and dignity of the court. 13 C. J., p. 6, sec. 5.

Where a party to a civil action has received full settlement of the redressable wrong for which the action was instituted, such party is not entitled to any other compensation or relief, and would not be entitled to maintain a contempt proceeding originating in such action, for the reason the foundation for remedial relief no longer exists. Gompers v. Buck Stove & Range Co., supra.

According to the provisions of section 1697, Comp. Stats. 1921, supra, in order for the respondent to be guilty of indirect contempt, he must have willfully disobeyed the order of the court or willfully resisted the execution of the order. As no order of the court was directed to the respondent, he could then only be guilty under the latter provisions of the statute of willfully resisting the execution of the order of the

court appointing the receiver, and the complaint filed nowhere charges the respondent with having willfully resisted the execution of the order of the court in appointing the receiver.

An examination of the authorities shows that the great weight thereof adheres to the rule that, in order to give the court jurisdiction of a proceeding for contempt not committed in the presence of the court, which is an indirect contempt, it is necessary that an affidavit be filed stating the facts constituting the contempt, and the cases are very few which adhere to the contrary rule. State v Henthorn (Kan.) 26 Pac. 937; Ex parte Jno. T. Duncan, 78 Tex. Crim. Rep. 447, 182 S. W. 313, 2 A. L. R. 222.

In order to institute an ordinary civil action in this jurisdiction in a court of record, it is incumbent upon the plaintiff to file a petition concisely stating the facts constituting his cause of action, and such facts must be stated in the petition as will show that the plaintiff is entitled to some relief. The failure to allege such facts essential to the relief sought renders the petition fatally defective. Sulsberger & Sons Co. v. Castleberry, 40 Okla. 613, 139 Pac. 837.

It must be observed from the prayer of the petition filed in the instant case that the complaint asked that the respondent be punished for contempt of court, and that "the court otherwise proceed to do all things necessary in and about the premises towards the prosecution of said parties and each and all of them for contempt of this court." It is impossible to determine from this prayer whether the proceeding was being prosecuted for the use and benefit of the plaintiff to the action, or to vindicate the dignity of the court. However, the prayer of the petition indicates that the punishment requested was to be punitive in its nature and for the vindication of the court. If the relief was to be remedial and for the benefit of the plaintiff in the action, the prayer of the petition should ask that the respondent be fined for plaintiff's use and benefit. The petition was styled the same as the civil action. If it was intended as a prosecution in vindication of the court's power and dignity, it should have been styled "State of Oklahoma v. N. C. Morgan" or "In re N. C. Morgan." The respondent should not have been left in doubt whether the contempt proceedings were instituted for remedial relief in aid of private litigation, or as a public prosecution

to vindicate the court's authority. Gompers v. Buck Stove & Range Co., supra.

The reason for the rule is apparent. The accused is entitled to be informed of the nature of the charge against him, and be able to determine whether it is a charge or a civil proceeding. U. S. v. Cruikshank, 92 U. S. 542, 550, 23 L. Ed. 588, 593.

It is our conclusion, under the Constitution and statutory provisions in force in this state, that there are only two classes of contempt—direct and indirect—and that the proceeding for the punishment for a direct contempt is a criminal proceeding; that the proceeding for the punishment of an indirect contempt, for the purpose of affording a party to the action remedial relief, is in its nature civil, in that the primary purpose of such proceeding is remedial and coercive for the benefit and protection of such party, but the punishment therefor is criminal in its nature. In the trial of the accused, in such a proceeding, the burden is upon the prosecution to prove the contemnor guilty of the acts constituting the contempt by clear and convincing evidence. St. Louis & S. F. Ry. Co. v. State et al., 26 Okla. 764, at page 766, 110 Pac. 759; 3 Enc. of Evidence, 470 and 471. It is only where the accused admits the violation of an order of the court that he has the burden of excusing his acts.

Upon an examination of the record it appears that the court fined the respondent, Morgan, $500 and ordered him to pay the fine to the receiver appointed in the action, and that he be confined to jail until the fine be paid or not to exceed a period of four months. It is impossible to determine from the record whether this fine was to be paid for the use and benefit of the plaintiff in the action, at whose instance the receiver was appointed, and, if so, whether the fine would be excessive measured by any pecuniary injury the plaintiff may have suffered, as there is no evidence in the record indicating whether the plaintiff had collected its debt for which it instituted the action or not. Counsel for the defendant in error insist that that is immaterial as to the respondent, as the court will direct the receiver as to what disposition to make of the fine. But it is material to know the extent of the pecuniary injury suffered by a party to an action, in order to determine whether or not the punishment imposed by the court in an indirect contempt proceeding instituted for the purpose of affording such party remedial relief is excessive.

Upon an examination of the whole record

in the instant case it appears that the proceeding was tried as a civil proceeding, in that it was instituted in the name of the plaintiff in the original action and the respondent was required to testify on behalf of the plaintiff over his objections. But it appears that the punishment imposed was punitive in its nature and such punishment as is only appropriate in a criminal contempt proceeding. Therefore, the result was clearly erroneous.

The record in the instant case discloses that the trial court instructed the jury that the burden was upon the accused. But, in view of the fact that it is our conclusion that the complaint filed in the instant case was insufficient to state a cause of action against the respondent, we deem it unnecessary to go into the other errors urged by counsel for the plaintiff in error.

For the reasons stated, the judgment of the trial court is reversed, and it appearing that the plaintiff has died since the institution of this proceeding, the cause is remanded, with directions to dismiss the same.

JOHNSON, C. J., and McNEILL, KANE, COCHRAN, and HARRISON, JJ., concur.