### Ex parte HIBLER.

No. 20769.   Opinion Filed Oct. 5, 1929.

Catlett & Catlett, for petitioner.

Lester E. Smith, for respondent.

ANDREWS, J.   The record in this case discloses that the trial court in a divorce proceeding granted an injunction and therein enjoined the petitioner herein from interfering in any manner with the plaintiff therein and her property.

Some three years thereafter she filed an instrument in the trial court in the same case and entitled as in that case, in which she set out an indefinite and uncertain statement of violations of the order of injunction. This instrument was entitled "Petition for Injunction," and prayed for an injunction. At the end thereof there was the additional prayer as follows:

"Plaintiff further prays that an order be made citing defendant to appear on the —— day of September, 1929, and show cause why he should not be punished for contempt and violation of the injunction hereinabove set forth."

This instrument was not sworn to or verified. A citation was issued, directed to petitioner and entitled in the divorce case, informing him of the charge that he had failed to comply with the order of the court made on the 17th day of March, 1926, enjoining him from certain acts, and commanding him to appear before the court and show cause why he should not be punished for contempt.

The record shows that petitioner waived a jury trial and entered a plea of guilty, but before sentenced he asked permission to withdraw his plea of guilty, objected to the sentence, and asked for a trial by a jury. He called the court's attention to the fact that no written accusation had been filed against him, that the petition did not state a cause of action, misjoinder of causes of action and other contentions, all of which were, by the court, overruled.

To the return of the sheriff in this case is attached a copy of the judgment and sentence by authority of which the petitioner is held. A portion of that order was devoted to the rendition of an injunction against the petitioner. That portion thereof dealing with the matter in issue here was as follows:

"It is further ordered, adjudged, and decreed that defendant is guilty of indirect contempt of this court in that he has on numerous and divers occasions violated the express injunctions of this court as set forth in plaintiff's petition, and admitted by the defendant, for all of which the defendant is adjudged guilty and sentenced to imprisonment in the county jail for a period of 30 days from this date, and the sheriff is directed accordingly."

That judgment discloses that petitioner was adjudged guilty of "indirect contempt" and that petitioner was "adjudged guilty and sentenced to imprisonment in the county jail for a period of 30 days from this date. * * *" This has an important bearing on the decision in this matter, as will hereinafter appear.

The Legislature is authorized by section 25, article 2, of the Constitution, to pass laws defining contempts and regulating the proceedings and punishment in contempt matters. Pursuant to that authority the Legislature adopted what now appears as section 1697, C. O. S. 1921, defining contempts; sections 413, and 1698, C. O. S. 1921, regulating the punishment for contempts, and sections 413, 1699, and 1700, C. O. S. 1921, regulating the proceedings in contempt matters. These sections were all in force in Oklahoma Territory prior to the adoption of the Constitution. They were adopted as a part of Revised Laws 1910. We will not attempt to determine their effect prior to that time. Suffice it to say that since the adoption of Revised Laws of 1910, these sections have been in full force. Since we adopted them from Oklahoma Territory, we adopted them with the construction placed thereon by the territorial court.

Since the time of Hutchinson v. Canon, 6 Okla. 725, 55 Pac. 1077, a distinction has been made between acts which are contemptuous and civil in their nature and those that are contemptuous and criminal in their nature. That court said:

"For a contempt in disobeying such an order the punishment is of two separate and distinct kinds; one to enforce obedience to the order; the other, to vindicate the honor and dignity of the court and to compel respect for its authority."

In that case there was under consideration a provision limiting the punishment for contempt to a fine of not more than $50 and (or) imprisonment for not more than ten days in the county jail. The court said:

"For instance, in the case at bar, the trial court, upon ascertaining, in a proper manner, that its former order had been willfully violated, could have fined the offender in the sum of $50, and have sentenced him to imprisonment for a term of ten days as a punishment of the latter kind, and regardless of any punishment which might become necessary for the purpose of enforcing a future compliance with the requirements of said order. The distinctions thus drawn are not novel, but are well founded in authority as well as reason. The Supreme Court of California, in Re Wilson, 75 Cal. 580, 17 Pac. 698, says, among other things, that: 'There is a well-settled distinction between a civil and a criminal contempt. The former consists generally, in failing to do something ordered to be done by a court in a civil action, for the benefit of the opposing party therein; the latter consists in acts of disrespect of the court; such as disorderly or violent conduct in its presence or immediate vicinity, or in the doing of a forbidden act, resistance to process, etc.'"

It will be noted from the judgment of the court under consideration herein that the order made was upon a finding that petitioner had violated a former order of that court. The penalty imposed was for the violation of that order. There is nothing in the order of the trial court under consideration herein that can be construed as an attempt to prevent further violations or require future compliance with the order of the court.

The procedure adopted by the Legislature for punishment for contempt for violation of an injunction is set forth in section 413, Id. That section provides that disobeyance of any injunction may be punished as a contempt by the court or any judge that might have granted the injunction in vacation. The word "may" was advisedly used, for the reason that the court or judge is not required to punish. This section provides, not only the procedure, but the punishment therefor, and

the party guilty of violating the injunction "* * * may be required to pay a fine not exceeding $200, for the use of the county, to make immediate restitution to the party injured, and to give further security to obey the injunction. * * *"

Under the facts shown in this case, no restitution to the party injured was necessary, so that the extent of the authority of the court in this instance was to impose a fine of not to exceed $200 and to require petitioner to give further security to obey the injunction. The order in this case wholly fails to comply with the provisions of section 413, Id.

It is true that under practically all of the decisions a court has the power to make such order as is necessary to prevent further violation of an injunction and to require a compliance therewith. That power was recognized by the Legislature in that portion of section 413, Id., which provides that further security to obey the injunction may be required, and that upon failure to give such security commitment to close custody may be ordered until the requirements of the court are complied with. In our opinion that provision is sufficient. It does not deprive courts of powers, but prescribes a method by which that power may be exercised. Upon proof of a violation of an injunction, the court, under section 413, Id., has authority to do three things: First, to impose a fine for the violation; second, to require immediate restitution to the injured party; and, third, to require further security to obey the injunction. Upon the failure to perform any of these acts, commitment to close custody may be ordered.

Section 413, Id., is identical with section 260 of the Kansas Code of Civil Procedure (General Statutes 1915, section 7158), which was under consideration by that court in State ex rel. Mitchell v. Harper, 219 Pac. 266. It was there alleged that the court had no power to require a bond conditioned that he would not further violate the order of the court as provided in said section, and that court held:

"The court had power to require that the bond be given. If there were no statutes, the court would have power to make such orders as were necessary to secure obedience to the injunction."

In the case at bar the trial court did not require security to obey the injunction and order the petitioner imprisoned for failure to comply therewith. The order of imprisonment in this case was for violating the injunction. It was inflicted as a punishment for an act already performed. There was no attempt made to follow the procedure outlined in section 413, Id.

The punishment directed by the trial court is contrary to that provided by the Legislature; it is in excess of the authority of the court and the order is corum non judice and void.

There is another reason why petitioner should be discharged. Section 1700, C. O. S. 1921, provides that:

"Whenever a person shall be imprisoned for contempt, the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court."

The Criminal Court of Appeals in Ex parte Dawes, 31 Okla. Cr. App. 397, 239 Pac. 689, construed the above section to require that the order of confinement must set forth the facts constituting the contempt, and that it is void unless it shows on its face facts sufficient to constitute a legal contempt, mere conclusions being insufficient. Before the order in this case can be construed to be in compliance with section 1700, Id., we must construe that portion thereof reading: "* * * as set forth in plaintiff's petition, * * *" as a sufficient compliance therewith. In Ex parte Dawes, supra, there was quoted with approval a statement from State v. Plese (Wash.) 235 Pac. 961, as follows:

"Judgment in contempt proceedings, reciting that court found defendant guilty of contempt as charged in affidavit filed in case, held not to make findings of fact."

The record in this case shows no compliance with the provisions of section 1700, Id., either in the order itself or in the records of the court. We consider this section to be valid under the authority given the Legislature, and that failure to comply therewith is a failure to make a record sufficient to sustain a judgment for contempt. The order of the court should have complied with this requirement and the court clerk should have made a proper record thereof. Neither the order nor the record of the court is sufficient, under section 1700, Id., to justify the sheriff in restraining this petitioner of his liberty.

There is a third reason why petitioner should be discharged and that is that there was no affidavit, complaint, or information setting forth the facts constituting the alleged contempt as provided by section 1699, Id. The contempt, if any, was indirect. In a proceeding for indirect contempt the ac-

cusation, the process, the answer of the contemnor, and the evidence, when properly preserved, together with the judgment, constitute the record. Emery v. State, 29 Okla. Cr. 29, 232 Pac. 128.

"The petition for injunction" in this case was not verified and the allegations thereof were so indefinite and uncertain as to fail to inform petitioner of the nature of the charge against him. These allegations consisted almost entirely of conclusions.

Reference was made in the petition to the divorce proceedings. Without an examination of those proceedings the petition is unintelligible. The injunction referred to in the petition described the property as "said property." There was nothing in the petition to show what property was intended. In our opinion the petition was not sufficiently definite to inform petitioner of the nature of the charges against him.

In our opinion, in a case of indirect contempt, there must be a formal information or complaint filed by the county attorney, a written charge by the court or judge, or, in the absence thereof, there must be a sworn accusation or complaint filed in the case before the court acquires any jurisdiction to proceed. A person cannot be brought before a court on a charge of indirect contempt of court without compliance with this requirement. The rule is materially different from that applied to direct contempts, where no verified accusation is necessary, as was stated by this court in State ex rel. Short v. Owens, 125 Okla. 66, 256 Pac. 704. We do not intend to hold that a complaint or information filed by officers of the court must be verified, for the court has inherent right to punish for contempt. We merely hold that where the accusation is in the absence of a complaint or information filed by the county attorney or charge by the court or judge there must be a verified accusation or complaint.

In Wofford v. State, 33 Okla. Cr. 288, 243 Pac. 988, the proper rule was announced as follows:

"Under Const. art. 2, sec. 25, and Comp. St. 1921, sec. 1699, a proceeding to punish for indirect contempt must be instituted by affidavit, complaint, or information, setting forth the facts, or by a statement of them in writing by the court or judge thereof."

As was said by this court in Morgan v. National Bank of Commerce, 90 Okla. 280, 217 Pac. 388:

"In a proceeding in an indirect contempt, in order to vest the court with jurisdiction, it is necessary that a complaint be filed stating the facts constituting the contempt, and the facts should be stated with sufficient particularity so as to inform the accused as to the nature of the proceeding instituted against him, and a complaint failing to state such facts is fatally defective."

The record in this case fails to show compliance with this provision.

We call attention to the fact that this prosecution was conducted in the name of the plaintiff in the divorce action and as a civil proceeding. The plaintiff therein sought an injunction and sought to have enforced a former injunction. That procedure was proper; being for her benefit, it was civil in its nature and could be prosecuted in her name. If the procedure was to vindicate the honor and dignity of the court and to compel respect for its authority, it was criminal in its nature and could not be prosecuted in her name, but must have been prosecuted in the name of the State of Oklahoma. The judgment rendered was clearly of a criminal nature. It was not for the benefit of the plaintiff, it was punishment imposed to vindicate the honor and dignity of the court' and to compel respect for its authority. Such a judgment is unauthorized and unwarranted in a proceeding instituted in the name of an individual.

On the record before us and for the reasons stated, we are of the opinion that the petitioner is unlawfully confined. The writ is allowed and petitioner discharged.

MASON, C. J., LESTER, V. C. J., and CLARK, RILEY, HEFNER, and SWINDALL, JJ., concur. HUNT and CULLISON, JJ., absent.

Note.—See "Injunctions," 43 C. J. §882, p. 504, n. 8; 883, p. 505, n. 20; §886, p. 507, n. 76; §887, p. 508, n. 84; §888, p. 509, n. 99.