The **BOARD OF GOVERNORS OF the REGISTERED DENTISTS OF OKLAHOMA**, Appellee,

v.

**J. G. CRYAN, d/b/a Denturist-Denture Lab.,** Appellant.

No. 52579.

Supreme Court of Oklahoma.

April 28, 1981.

Rehearing Denied June 22, 1981.

Certiorari Denied Jan. 18, 1982.

See 102 S.Ct. 1251.

Lawrence D. Taylor, Tulsa, for appellant.

James E. Poe, Tulsa, for appellee.

HARGRAVE, Justice.

This is an appeal from a judgment of indirect contempt and consequent sentence of the minimum permissible fine and jail term provided under the statutory authority of 59 O.S. 1971 § 328.49. The judgment of indirect contempt arose from defendant's violation of a permanent injunction charged in a second contempt citation and its amendment, aggregating eleven violations of the previously issued injunction.

Pursuant to the citation, a trial was held with jury waived by the parties upon the plea of not guilty of the defendant, J. G. Cryan. The two pivotal evidentiary matters disclosed at the trial, for purposes of this appeal, are the uncontroverted fact that the defendant had violated the previously issued injunction but had not violated the injunction for five months prior to this hearing.

The direct statutory authority on the punishment for indirect contempt of an in-

junction issued to mandate cessation of the unauthorized practice of dentistry in this jurisdiction is 59 O.S. 1971 § 328.49. That statute makes the unauthorized practice of dentistry a misdemeanor, provides punishment therefor, and additionally provides a minimum punishment for contempt of court arising from the violation of an injunction prohibiting unlicensed dental practice of 30 days in the county jail and a fine of not less than $500.00. The court found that the defendant had violated the injunction and imposed the minimum statutory penalty for the contempt.

The appellant's brief notes two propositions of error. First, whether the mandatory minimum punishment provided by the statute is constitutionally permissible when applied to a civil indirect contempt of court. Secondly, the court is alleged to have erred in applying a burden of proof of mere preponderance of the evidence to the determination of a violation of the injunction.

■ Appellant asserts in his brief that the burden of proof in a criminal action is reasonable doubt and in a civil action it is asserted to be proof by clear and convincing evidence. The trial court is alleged to have indicated it used a lesser, and impermissible, standard, that being the preponderance of the evidence. This argument will not suffice to establish reversible error under the citation of authority given therefor by the appellant. *Clark v. Most Worshipful St. John's Grand Lodge of Ancient Free and Accepted Masons of Oklahoma*, 198 Okl. 621, 181 P.2d 229 (1947). That opinion notes the standard of proof necessary to establish a violation of an injunction in a civil contempt proceeding is clear and convincing evidence of violation of the previously issued injunction. Additionally, however, that case makes the point that an incorrect charge to the jury of the burden of proof to be the lesser standard will not suffice to overturn a judgment of contempt when the evidence of the defendant discloses guilt. In this proceeding there is abso-

lutely no evidence which would support a finding that Mr. Cryan did not violate the injunction, and thus arguments bearing on the standard of proof are superfluous. The defendant's violation is established under any view one can take of the record on appeal.

■ Secondly, the appellant argues the minimum sentence provision of 59 O.S. § 328.49 is unconstitutional as applied to him because no violations of the statute had occurred for five months and a sentence for past violations does not serve the purpose of coercing present compliance with the injunction, but rather amounts to a mandatory punitive sentence reserved to criminal contempt sentences. Underlying this is the assumption that a civil contempt incarceration must be terminated when the defendant agrees to obey the order previously violated.

Those arguments are generally correct as they relate to contempts at common law, but in Oklahoma, unlike most jurisdictions, the powers of contempt are provided by express constitutional and statutory provisions as well as their character derived from the historic antecedents of the court's inherent authority to enforce its orders. Thus, constitutional and statutory provisions, in enlarging the scope of the contempt power in Oklahoma, have superseded those common law definitions. *Seay v. Howell*, 311 P.2d 207 (Okl.1957), overruling *McKee v. DeGraffenreid*, 33 Okl. 136, 124 P. 303, (1912). Inasmuch as the powers of contempt are susceptible to legislative determination through express grant of the Oklahoma Constitution and not solely founded upon the inherent powers of the court in this jurisdiction, proceedings for contempt are denominated *sui generis*. *State ex rel. Young v. Woodson*, 519 P.2d 1357 (Okl. 1974); *Fulreader v. State*, 408 P.2d 775 (Okl.1965). Our Constitution allows the legislature to define contempt. The definition of an indirect contempt is found in 21 O.S. 1971 § 565 [1] which specifically enumerates willful disobedience of any process or order as an indirect contempt. The Oklaho-

---

1. § 565. Contempts, direct and indirect—definition.

Contempts of court shall be divided into direct and indirect contempt. Direct contempts shall consist of disorderly or insolent behavior

ma Constitution, Article 2, § 25 [2] provides the legislature shall regulate the proceedings and punishment in matters of contempt. The express language of the article allows a penalty to be imposed upon a jury finding of guilt of violating an order of injunction thusly:

> ... that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction or restraint, made or entered by any court or judge of the State shall, before penalty is imposed, be entitled to a trial by jury as to guilt or innocence. ...

It would seem abundantly apparent that the Oklahoma Constitution contains no prohibition against a punitive sentence in an indirect contempt setting composed of violation of a court's injunction, by virtue of the last quoted provision of the Constitution. The imposition of a penalty for violation or disobedience of an injunction, as authorized by the very language of the Constitution, is hardly consonant with the defendant's claim that the court may only act remedially in an indirect contempt situation. Here, however, the power to impose the penalty is also expressly mandated by the legislature for violation of an injunction designed to stop the unauthorized practice of dentistry under 59 O.S. 1971 § 328.49. The sentence is the minimum the court was statutorily empowered to impose in this situation.

The appellant's citations [3] of case law from this Court to the Court of Criminal Appeals dealing with the general nature of contempt and the purposes usually served by a citation therefor do not impeach the validity of the proceedings here for they are both constitutionally authorized and statutorily mandated. Authority directed to punishment authorized under 12 O.S. § 1390 as proper only where nonpunitive does not encroach upon the express authority of 59 O.S. 1971 § 328.49.

The record designated by appellant is only a fraction of the record of this action in the trial court. The docket sheet contains approximately 105 entries, while the designated record is twenty pages in its entirety. We note the docket sheet shows, *inter alia*, an additional petition in error over and above that instituting this appeal, and an additional contempt for which jury trial was demanded. Due to the *indicia* of other proceedings not in the record, we cannot assume the trial judge erred in issuing a judgment which contains aspects of a criminal contempt sentence. The usual indirect contempt situation is issued for violation of an order to a party to complete an act, such as pay support alimony. There the court is able to issue an attachment which is conditional upon continued failure to comply. The rights of the parties and dignity of the court require no more than incarceration until the party complies. Where the citation results from a failure to

committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of wilful disobedience of any process or order lawfully issued or made by court; resistance wilfully offered by any person to the execution of a lawful order or process of a court.

2. § 25. Contempt—Definition—Jury trial—Hearing.

The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the

court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the State shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given.

3. Those citations are: *Davis v. Murphy*, 199 Okl. 545, 188 P.2d 229 (1947); *Fagin v. Thoroughman*, 190 Okl. 649, 126 P.2d 982 (1942); *Cannon v. State*, 58 Okl.Cr. 451, 55 P.2d 135 (1936); *In re Hibler*, 139 Okl. 157, 281 P. 144 (1929); *Hadley v. Hadley*, 129 Okl. 219, 280 P. 1097 (1928); *Ex Parte Stephenson*, 89 Okl.Cr. 427, 209 P.2d 515 (1949); *Kelley v. Kelley*, 206 Okl. 188, 242 P.2d 439 (1952); *Clark v. Most Worshipful St. John's Grand Lodge of Ancient Free and Accepted Masons of Oklahoma*, 198 Okl. 621, 181 P.2d 229 (1947).

cease acts which have been enjoined, such as failure to cease practicing dentistry without a license, a conditional sentence is powerless as an enforcement tool. For, as the appellee here contends, if the punishment for the contempt cannot share any of the attributes of a criminal sentence, it would be entirely impossible to cause the contemnor to be incarcerated at all, because release would be required upon a profession of intent never to violate the injunction. The very presence of the contemnor in court and/or in the anteroom of the incarceration facility would guarantee that he was not at that moment in violation of the injunction. If the court's sentence for contempt could not incarcerate the contemnor unless he was then in violation there could be no enforcement of the order. Both the Oklahoma Constitution and statutes declare the court has the power to enforce its orders and the historic bases of the powers of contempt arise from the selfsame principle.

The fact that the sentence here statutorily mandated is for a fixed period rather than until the contemnor purges himself is a direct result of the analysis above given and arises from the fact that the procedure and sentence actually undertaken are required to enforce the order. Contempt judgment allowing the defendant here to evade the penalty by repeatedly asserting his assured future compliance would reduce the court's power of enforcement to a mockery.

Here the accused defendant was offered a jury trial and waived it, was represented by counsel, had an opportunity to be heard, and insofar as discernible in this record, raised no issue of possible compliance which requires a discussion of prejudice occurring by virtue of the degree of proof issue he asserts on appeal. Where the record contains not a scintilla of evidence presenting the trier of fact the issue of compliance, the degree of proof issue is immaterial, for under any view of the evidence the defendant violated the injunction. Under such a record, the propositions of error tendered do not suffice to demonstrate reversible error.

The judgment of the trial court is AFFIRMED and the cause is REMANDED for further proceedings.

BARNES, V. C. J., and HODGES, LAVENDER and DOOLIN, JJ., concur.

IRWIN, C. J., and WILLIAMS, SIMMS and OPALA, JJ., dissent.

SIMMS, Justice, dissenting.

I must respectfully dissent.

There are times in the law when you must look beyond the surface. Things are not always what they appear to be.

The portion of statute at issue here [1] does not concern contempt; either civil or criminal, direct or indirect. Its self-description is thus wholly inaccurate as it is actually a criminal statute. It provides a minimum punishment, imprisonment and/or fine, for a prohibited action. Statutes which do that define a public offense, and are by definition criminal, not civil.

Title 21, O.S. 1971, § 3, provides:

"A crime or public offense is an act or omission forbidden by law, and to which is annexed, upon conviction, either of the following punishments:

1. Death;
2. Imprisonment;
3. Fine;
4. Removal from office; or,
5. Disqualification to hold and enjoy any office of honor, trust, or profit, under this State."

Legislatures do occasionally set a maximum limit on punishment which may be imposed by a court on a contemnor. (It is of passing interest to note that even that legislative intrusion into the judicial power to punish for contempt has been the subject

---

1. Title 59, O.S. 1971, § 328.49, provides:

"In addition to any other penalties provided herein, any person found guilty of contempt of court by reason of the violation of any order or judgment of injunction prohibiting the unlicensed practice of dentistry now in effect or hereafter entered pursuant to any provision of this act, shall be punished by imprisonment in the county jail for a minimum time of not less than thirty (30) days or a maximum of not more than one (1) year and by a fine of not less than Five Hundred Dollars ($500.00). . ."

of much litigation.) The difference between a statutory maximum punishment and a statutory minimum punishment however, is, or should be, obvious.

The majority's confusion stems from its acceptance of the statute being what it says it is. It is not.

It is indeed unusual for a legislature to disguise a criminal statute as something else. It is also unconstitutional. So was the judicial process and procedure to which this appellant was subjected. It is the substance of things, not mere form, to which courts must look. See generally, *Chicago, R. I. & P. Ry. Co. v. Territory*, 25 Okl. 238, 105 P. 677 (1909).

The fact that this appellant has been denied due process of law under both the state and federal constitutions, in this "nonprosecution" for this "non-crime" for which there is no defense and for which he must suffer mandatory penal sanctions is so basic it requires no authority. I dissent.