2001 OK CIV APP 119

**James ROOK, Plaintiff/Appellant,**

v.

**Linda ROOK, Defendant/Appellee.**

**No. 93,168.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 11, 2001.

---

Larry E. Goins, Oklahoma City, OK, for Appellant.

Edward Goldman, Oklahoma City, OK, for Appellee.

REIF, Vice Chief Judge:

¶ 1 This appeal arises from an indirect contempt proceeding prosecuted by custodial mother, Linda Rook, against obligor-father, James Rook, for failing to pay child support. A non-jury trial was held by agreement. At trial, Mr. Rook admitted that he had not paid child support from February 1994 through May 7, 1999, the date of trial. Mr. Rook also acknowledged that his obligation to pay child support was established by a final judgment that he had asked the court to enter on June 15, 1993. However, he sought to excuse his non-payment on the ground that he did not have the financial ability to pay. He also contended that he could not determine the amount of child support to pay due to allegedly confusing provisions in the judgment. In particular, Mr. Rook believed that he could not determine the amount of child support he owed, because a specific portion of the support was designated for day care expenditures and custodial mother never provided him any receipts for day care expenses as provided by the judgment.

¶ 2 At the conclusion of the non-jury trial, the trial court stated that "[b]ased on the evidence taken, the Court finds that Plaintiff

[James Rook] owes the Defendant [Linda Rook] $13,337 in back support, therefore, is guilty of contempt for non payment of support." The trial court sentenced Mr. Rook to 180 days in jail and initially set a purge amount of $13,337.

¶ 3 The trial court explained the judgment by noting "the basic question in all of these cases is just the same and there is no escaping it ... [e]ither you've paid it or you haven't paid it [a]nd that's the reason the Court has found [James Rook] guilty of contempt for the non-payment of support." In adding a $750 attorney fee and $50 cost assessment to the purge fee, the court further recognized that, "it's going to be hard for him, in his present situation, to come up with [the purge fee]." The court made a final observation that, "I know it's going to be difficult. I wish there were more alternatives, but if we don't enforce the court orders, we don't need the court."

¶ 4 This case presents the all too familiar situation of parties to a court-ordered obligation neglecting both its payment and its enforcement until the passage of time so aggravates the problem that providing a reasonable solution becomes almost impossible. In making this observation, we do not suggest that obligor-father, Mr. Rook, should be excused for not making any payments on his court-ordered obligation for over four years. On the other hand, we are as equally convinced that inaction on the part of custodial mother for this same period of time substantially lessened the coercive effect of indirect contempt to obtain payment. Inaction also has led to a circumstance where total payment of four years of arrearages is highly unlikely.

¶ 5 Moreover, with all due regard for and deference to the vast experience of the trial court in handling cases of this nature, we must respectfully disagree with the trial court's observations about the determinative issue and lack of alternatives available to the court in cases of this nature. A number of reasons lead us to conclude that the judg-

ment should be reversed and this case be remanded for further proceedings.

¶ 6 First, the determinative issue is not "either you've paid it or you haven't paid it." The determinative issue is whether the failure to pay is "*wilful* disobedience of any ... order lawfully issued or made by [the] court." *21 O.S.1991 § 565* (emphasis added). Neither the trial court's pronouncement from the bench nor the journal entry contain a finding that Mr. Rook's failure to pay was "wilful."

¶ 7 Second, incarceration with a purge fee set at the total amount of arrearage is not the only alternative available to the court to enforce the order and allow the obligor-parent to purge a wilful failure to pay. In 1994, the Oklahoma Supreme Court adopted District Court Rule 8.3,[1] pursuant to authority given by *21 O.S.1991 § 566* (B). This statute authorized the Oklahoma Supreme Court to promulgate guidelines for determination of the sentence and purge fee in cases of indirect contempt for the failure to comply with an order for child support. Significantly, District Court Rule 8.3(b)(1) calls for "paying the full amount of the arrearage, or some portion thereof, as a lump sum *if the court determines the contemnor has financial ability to do so.*" Clearly, the trial court did not believe that Mr. Rook had the financial ability to pay the full amount of the arrearage. We believe that the sentencing alternatives provided by District Court Rule 8.3(a), (b)(2), and (c) should have been considered in this case.

¶ 8 In reading District Court Rule 8.3 in its entirety, it is reasonably clear that the trial court can defer committing the contemnor to the custody of the sheriff subject to the contemnor "[m]aking all future payments for child support" under 8.3(a) and "making additional monthly payments [on the arrearage]" under 8.3(b)(2) and (c), and that such deferred sentence "shall continue until the child support arrearage which was the subject of the contempt action, has been paid in full," under 8.3(d). If a contemnor fails to fulfill such conditions, then the court can

---

**1.** District Court Rule 8.3, 12 O.S. Supp.2000 ch. 2, app. (Adopted by order of February 4, 1994, eff. March 28, 1994.)

commit the contemnor to the custody of the sheriff as provided in 8.3(e). If the court makes a commitment under 8.3(e), release thereafter can occur only upon payment in full of the adjudicated arrearage, serving the full sentence, or by a court-approved agreement between the parties for payment which forms a condition for a suspended sentence.

¶ 9 Third, in setting a purge fee, "it is material to know the extent of the pecuniary injury suffered by a party to an action in order to determine whether or not the [amount of payment] imposed by the court in an indirect contempt proceeding, instituted for the purpose of affording such party remedial relief, is excessive." *Morgan v. Nat'l Bank of Commerce of Shawnee,* 1923 OK 240, 90 Okla. 280, 217 P. 388, 392. In the instant case, custodial mother was obligated by the order she seeks to enforce to provide receipts for the day care expenses she incurred. That is, this provision required her to account for the portion of support designated for day care. Custodial mother's failure to obey this portion of the order she seeks to enforce leaves the court with no means to determine whether she sustained pecuniary injury or loss from obligor-father's failure to pay the day care portion of the support. Absent the child care receipts specified in the court order, the day care portion of the unpaid child support should be subtracted in determining the arrearage and any payment for the arrearage under 8.3(b)(2) and (c).

¶ 10 As a final note, we have reviewed the order of June 15, 1993, and do not find it to be ambiguous or confusing. Because it was never modified, we hold that it must be enforced according to its terms without regard to the fact that the older child who was placed in Mr. Rook's custody by the order, returned to live with his mother in the summer of 1994. Also, Mr. Rook's obligation to pay support for the younger child who remained in mother's custody must be off-set by the support obligation established for mother for the older child, through the time the older child remained in school after reaching majority. The evidence shows the older child dropped out of school in October 1995, after having reached majority in February 1995. Therefore, Mr. Rook's arrearage from July 1993 through October 1995 should be computed by applying the off-set of mother's support obligation for the older child. Thereafter, Mr. Rook's support obligation should be computed without the off-set. However, the portion of the support obligation representing day care expenses for which no receipts were provided is to be subtracted from the support obligation both before and after October 1995.

¶ 11 Based on the foregoing, we reverse and remand for further proceedings with directions to (1) expressly determine whether Mr. Rook's failure to pay child support was wilful disobedience of the child support order; (2) reconsider the sentence and purge fee in light of District Court Rule 8.3; and (3) compute the arrearage in accordance with the construction this court has given the order of June 15, 1993.

¶ 12 REVERSED AND REMANDED WITH DIRECTIONS.[2]

¶ 13 GOODMAN, P.J., and COLBERT, J., concur.

---

**2.** In reversing and remanding, we are cognizant that the children for whom support was provided by the order of June 15, 1993, have both reached majority and that "making all future payments" under 8.3(a) is no longer a factor for purposes of determining the sentence and purge fee. However, enforcement of the support order is still possible through a deferred sentence conditioned on "making monthly payments" as provided in 8.3(b)(2) and (c) which "shall continue until the child support arrearage, which was the subject of the contempt action, has been paid in full," under 8.3(d). In the event Mr. Rook does not make the payments determined under 8.3(b)(2) and (c), the deferred sentence could be withdrawn and he could be sentenced as provided in 8.3(e).