2004 OK 34

**Jennifer L. HENRY, Plaintiff/Appellant,**

v.

**Arnold J. SCHMIDT, Defendant/Appellee.**

**No. 97,705.**

Supreme Court of Oklahoma.

May 18, 2004.

James R. Elder, Tulsa, Oklahoma, for the Appellant.

Patti J. Palmer & Lamirand, Pawhuska, Oklahoma, for the Appellee.

HODGES, J.

## I.  ISSUE

¶ 1 The issue before this Court is whether a sentence and a fine can be imposed for indirect contempt without allowing the accused to purge the sentence.[1]  We find the trial court was within its statutory authority to impose a sentence and fine for indirect contempt.  However, the trial court erred in using a clear-and-convincing evidence standard rather than beyond a reasonable doubt

---

1.  In this context, to purge means to clear a contempt.  Black's Law Dictionary 1111 (5th ed.1979).

and in not affording the defendant her right to a jury trial.

## II. FACTS

¶2 In the underlying proceeding to establish paternity, the court adjudicated Arnold Schmidt to be the father of his and Jennifer Henry's child (the child), awarded custody to Henry, and awarded visitation to Schmidt. Later Schmidt filed a motion to modify custody. A trial was set for April of 2001. After taking testimony for three days, the court continued the trial until 9:30 a.m. on May 15, 2001. When the parties appeared before the court on May 15, 2001, Henry requested a continuance. She requested that she be allowed to attend a ceremony at which the child was to receive an award. After Henry promised that she would return, the judge continued the trial until 1:00 p.m. About 12:45, Henry called the judge's bailiff stating that she had car problems between Hominy and Wynona and that she would be in court as soon as her car cooled. She said that she had spoken to a Wynona police officer about the car problems.

¶3 Schmidt filed a motion for contempt against Henry. In the motion, Schmidt asked that Henry be assessed attorney fees, that she be fined, and that the court impose a term of imprisonment. A hearing was held on the motion for contempt at which both Schmidt and Henry appeared.

¶4 Mr. Janeway, Henry's employer, testified that, on May 15, Henry returned to work, went to lunch with customers, and was at work all afternoon. Mr. Teal, the Wynona officer on duty, testified that he was the only officer on duty, that he patrolled the highway between Hominy and Wynona, that he did not remember assisting anyone with car problems, that no records indicated that he had assisted anyone, and that he did not recognize Henry. Schmidt's attorney could not find Henry when she traveled the road between Hominy and Wynona looking for her.

¶5 On May 16, the day that the trial was scheduled to reconvene, Henry's family called to say that she was ill. A doctor's office faxed the judge a statement that Henry could return to work on May 18, 2001. On May 18, 2001, Henry was served with notice that the trial was reset for May 24th and May 25th, 2001.

¶6 Schmidt hired private investigators to observe Henry's activities on May 23rd through May 25th. The investigators testified that on May 24th, Henry went to several stores where she shopped. After shopping at the grocery store, Henry loaded the groceries into the trunk of the car. Later in the day, Henry, her husband, and the child went to the home of Henry's father and then to a motor home at Walnut Creek State Park.

¶7 On the afternoon of May 25th, Henry and the child returned to the camp site by boat. Henry retrieved a large bag of charcoal from under the motor home. The investigators' pictures of Henry confirm these activities. Even though Henry continued to maintain that she was ill on May 24th and 25th and that she was confined to bed for most of the time, her testimony about her activities was conflicting.

¶8 The court took judicial notice that Henry had failed to appear in court for previous hearings. Bench warrants were issued on several occasions because Henry had failed to appear in court. Further, Henry admitted that she failed to appear in court in a Tulsa County felony case.

¶9 The trial court found by clear-and-convincing evidence that Henry was guilty of two counts of contempt, ordered her to pay a $500 for each count, ordered her to serve 15 days in the Osage County Jail, and ordered her to reimburse Schmidt $3,000 in attorney fees. The Court of Civil Appeals affirmed. This Court granted certiorari.

## III. ANALYSIS

¶10 The only issue preserved for this Court's review is whether the trial court erred in assessing a fine and ordering Henry to serve 30 days in the Osage County jail. Henry argues that she should have been allowed to purge the contempt, but since purge was impossible at the time of the contempt order, incarceration was unauthorized. Henry argues for a dichotomy equating criminal contempt with direct contempt

and civil contempt with indirect contempt. A dichotomy which is inconsistent with Oklahoma's statutory scheme.

▓ ¶ 11 Contempt as civil and criminal was a concept of the common law distinguished by procedural differences.[2] Oklahoma has abolished all common law forms of contempt.[3] In Oklahoma, contempt is governed by its constitution and statutes,[4] in which the legislature did not adopt the common law distinction between civil and criminal contempt.[5] Rather, contempt proceedings are *sui generis*.[6] Oklahoma's constitution dictates that the legislature ·is to pass laws defining contempt and regulating the proceedings and punishments.[7] Constitutionally, a person accused of contempt must be given an opportunity to be heard.[8]

▓ ¶ 12 The legislature divided contempt into direct and indirect.[9] Direct contempt is an act committed in the presence of the court.[10] Indirect contempt "is the willful disobedience of any process or order lawfully issued or made by [the] court...."[11] Because Henry refused to appear in court as ordered, her acts were indirect contempts.

▓ ¶ 13 The punishment for indirect contempt may be remedial to coerce the defendant's behavior, or it may be penal to punish the defendant for disobedient or disorderly behavior.[12] The legislature has provided for a fine and imprisonment as punishment for both direct contempt and indirect contempt.[13] If the imprisonment is for a definite period of time, its purpose is penal and cannot be shortened by compliance or by a promise to·comply with a court order.[14] If the disobedience is a completed act, then the imprisonment must be penal rather than coercive.[15] In contrast, if the purpose is to coerce the defendant to comply with a court order, purge may be properly allowed and sometimes statutorily required.[16] The statutes do not make a distinction between penal and coercive punishment based on the style of the case or who initiates the proceedings.[17]

¶ 14 In the present case, the trial court ordered Henry imprisoned for 30 days total. The imprisonment was punitive with no right to purge and was within the trial court's statutory authority as was the fine.[18]

¶ 15 Henry argues that she did not have timely notice that she might be imprisoned. This is simply not true. The application for contempt prays that Henry "be adjudged guilty of indirect contempt, and punished by fine or imprisonment, and [Schmidt] be awarded his reasonable attorney's fee and costs, and all other and further relief to which he may be entitled...."

2. *Harber v. Shaffer*, 1988 OK 45, ¶ 2, 755 P.2d 640, 643–44 (1988) (Opala, J., dissenting); Ronald L. Goldfarb, *The Contempt Power* 49 (1963); *see Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444–45, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

3. *Watson v. State ex rel. Michael*, 1989 OK 116, ¶ 5, 777 P.2d 945, 946–47.

4. *Id.;* Okla. Const. art. 2, § 25, Okla. Stat. tit. 21, §§ 565–67 (2001).

5. Okla. Stat. tit. 21, §§ 565–67 (2001).

6. *Board of Governors of Registered Dentists of Oklahoma v. Cryan*, 1981 OK 52, ¶ 7, 638 P.2d 437, 438.

7. Okla. Const. art. 2, § 25. Oklahoma's constitution does not prohibit a punitive sentence for indirect contempt. *Cryan*, 1981 OK 52 at ¶ 7, 638 P.2d at 438–39.

8. Okla. Const. art. 2, § 25.

9. Okla. Stat. tit. 21, § 565 (2001).

10. *Id.*

11. *Id.*

12. *Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Goldfarb, *supra* note 1, at 56–58.

13. Okla. Stat. tit. 21, § 566 (2001).

14. *Gompers*, 221 U.S. at 442–43, 31 S.Ct. 492.

15. *Id.;* Goldfarb, *supra* note 1, at 57.

16. Okla. Stat. tit. 21, § 566(B)(1) (2001) (requiring the court to set a purge fee in cases "of indirect contempt for the failure to comply with an order for child support, other support, visitation, and other orders regarding minor children").

17. *See* Okla. Stat. tit. 21, §§ 565–67 (2001).

18. *Id.* at § 566.

¶ 16 Henry relies primarily on *Morgan v. National Bank of Commerce of Shawnee*.[19] Since this Court reached its decision in *Morgan*, Oklahoma's contempt jurisprudence has evolved to better reflect its statutory scheme. The civil and criminal dichotomy articulated in *Morgan* is not a correct statement of the statutory law but reflects the remains of the common-law notion of contempt proceedings. To the extent that *Morgan* is inconsistent with this opinion, it is overruled.

¶ 17 In *Board of Governors of Registered Dentists of Oklahoma v. Cryan*,[20] this Court addressed a similar issue. This Court rejected the claim that "the court may only act remedially in an indirect contempt situation."[21] In *Cryan*, the legislature authorized the imposition of a penal fine and term of imprisonment for indirect contempt for a person guilty of violating an injunction prohibiting the unlicensed practice of dentistry. Similarly, the legislature has authorized the court to impose a fine and term of imprisonment for indirect contempt for wilfully disobeying a court's orders.[22] This punitive measure is not compromised by an award of attorney fees or other sanctions.[23]

¶ 18 Even though a penal sanction may be imposed for indirect contempt, it may not be imposed absent federal constitutional protections.[24] In *Hicks v. Feiock*,[25] a parent failed to make court ordered child support payments. He was sentenced to 25 days suspended sentence and placed on probation.[26] He was also ordered to make payments on the arrearage.[27] The trial court's order was unclear whether satisfaction of the arrearage would purge the sentence.[28] Statutorily the state placed an element of the offense, the ability to make the required child support payments, on the parent.[29] The United States Supreme Court held if the payment of the arrearage purged the sentence, then the statute was constitutionally valid and the constitutional protections attaching to criminal protections did not apply.[30] However, if the payments did not purge the sentence, (1) the proceeding was penal, (2) federal constitutional protections attached, and (3) the state was constitutionally required to show beyond a reasonable doubt the parent's ability to make the required payments.[31]

¶ 19 Federal constitutional protections attaching to an indirect contempt proceeding wherein penal sanctions are imposed include the right to a jury trial[32] and proof of the offense beyond a reasonable doubt.[33] In an indirect contempt proceeding with the imposition of penal sanctions, a defendant may waive his constitutional right to a jury trial only upon "a clear showing that such waiver was competently, knowingly and intelligently given."[34] "A record showing an intelligent, competent and knowing waiver of a fundamental right is mandatory. Anything less is not a waiver."[35]

---

19. 1923 OK 240, 217 P. 388.

20. 1981 OK 52, 638 P.2d 437.

21. *Id.* at 1981 OK 52, ¶ 7, 638 P.2d at 438–39.

22. Okla. Stat. tit. 21, §§ 565–67 (2001).

23. *Gibbs v. Easa*, 1998 OK 55, ¶¶ 12–13, 998 P.2d 583, 586–87. Henry's petition for certiorari did not raise the issue of whether attorney fees should have been awarded. Thus, the issue is not addressed here, and the part of the Court of Civil Appeals' opinion addressing the issue is left intact.

24. *Hicks*, 485 U.S. at 632, 108 S.Ct. 1423.

25. *Id.* at 624, 108 S.Ct. 1423

26. *Id.* at 639, 108 S.Ct. 1423.

27. *Id.*

28. *Id.*

29. *Id.* at 637, 108 S.Ct. 1423.

30. *Id.* at 637–38, 108 S.Ct. 1423.

31. *Id.* at 637–38, 108 S.Ct. 1423.

32. Okla. Const. art. 2, § 25; Okla. Stat. tit. 21, 567 (2001).

33. *Hicks*, 485 U.S. at 632, 108 S.Ct. 1423.

34. *Valega v. City of Oklahoma City*, 1988 OK CR 101, 755 P.2d 118, § 5, 755 P.2d 118.

35. *Id.; Taylor v. Illinois*, 484 U.S. 400, 418 n. 24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

¶20 In the present case, Henry was not afforded the required constitutional protections before penal sanctions were imposed. There is no showing of a valid waiver of Henry's fundamental right to a jury trial. Further, the trial court based its decision on a clear-and-convincing evidence standard. The trial court was authorized to impose remedial or coercive sanctions with the right to purge based on a clear-and-convincing standard. Because penal sanctions were imposed, the burden of persuasion standard was proof beyond a reasonable doubt.[36]

## IV. CONCLUSION

¶21 We hold when a trial court imposes a penal sanction in an indirect contempt proceeding, the defendant is entitled to the constitutional protections afforded in criminal proceedings. This holding does not apply to indirect contempt proceedings wherein only remedial or coercive sanctions are imposed and where the evidentiary burden of persuasion remains clear and convincing.[37] This matter is remanded to the trial court with instructions to afford Henry a jury trial and to find proof beyond a reasonable doubt before penal sanctions are imposed. The Court of Civil Appeals' opinion is vacated to the extent that it addresses the correctness of imposing a fine and of a term of imprisonment. Because the issue of the attorney fees addressed by the Court of Civil Appeals were not raised in the petition for certiorari, the remainder of the Court of Civil Appeals' opinion is left undisturbed.

COURT OF CIVIL APPEALS' OPINION VACATED IN PART AND LEFT UNDISTURBED IN PART; TRIAL COURT'S JUDGMENT REVERSED; CAUSE REMANDED.

¶22 WATT, C.J., LAVENDER, HARGRAVE, KAUGER, BOUDREAU, WINCHESTER, EDMONDSON, JJ., concur.

¶23 OPALA, V.C.J., concurs in result.

---

**36.** *Hicks*, 485 U.S. at 632, 108 S.Ct. 849. Article 2, section 7 of the Oklahoma's constitution provides:

No person shall be deprived of life, liberty, or property, without due process of law.

Due process protections encompassed within article 2, section 7 of Oklahoma's constitution are coextensive with those of its federal counterpart. *Presley v. Board or County Comm'rs*, 1999 OK 45, ¶8, 981 P.2d 309, 312. Therefore, in addition to article 2, section 25 of Oklahoma's constitution, article 2, section 7 provides a *bona fide*, separate, adequate, and independent ground for this Court's decision. *See Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

**37.** All defendants in indirect contempt proceedings have a statutory right to be tried by a jury. Okla. Stat. tit. 21, § 567 (2001).